**CHRISTIAN v. GALUTIA et ux.**

No. 2936.

Court of Civil Appeals of Texas. Waco.
Jan. 11, 1951.

Rehearing Denied Feb. 8, 1951.

Carl Wright Johnson, Nat L. Hardy, and Alfred W. Offer, all of San Antonio, for appellant.

Charles J. Lieck, Louis W. Schlesinger, San Antonio, for appellee.

HALE, Justice.

This is a suit for damages resulting from alleged malpractice on the part of appellant, Dr. T. E. Christian, in the diagnosis and treatment of appellee, Mrs. Vera Galutia, during childbirth. The case was tried before a jury. In response to special issues the jury found, among other things, that appellant was negligent in failing to deliver the child by Caesarean birth on the morning of November 16, 1947, and delaying the Caesarean operation until the night of the same date and that such negligence was a proximate cause of the claimed injuries and suffering. The jury further found that $11,000.00 was the amount of money which would reasonably compensate appellees for the mental pain and suffering of Mrs. Galutia as a proximate result of

such negligence. Thereupon, the court rendered judgment in favor of appellees and against appellant for the sum of $11,000.00. In due time appellant filed his motion for new trial, specifying as grounds therefor the matters hereinafter discussed. The motion was overruled, the appeal was duly perfected and the cause is now properly pending in this court for review.

Under the several points in his brief appellant says the judgment of the court below should be reversed because (1) there was no evidence, or, in the alternative, there was not sufficient evidence, to show that he was guilty of malpractice in the diagnosis or treatment of Mrs. Galutia or that the diagnosis and treatment complained of constituted negligence, or that such negligence was a proximate cause of Mrs. Galutia's injuries and suffering; (2) the court erred in permitting Mrs. Galutia and certain witnesses in her behalf to testify, over appellant's objection, to hearsay statements purported to have been made by doctors and nurses concerning Mrs. Galutia's condition and the proper methods of treating her; and (3) the verdict of the jury on the amount of damages was so grossly excessive under the evidence as to demonstrate passion and prejudice on the part of the jury.

The evidence before us discloses that appellant is a graduate of the School of Medicine of the University of Texas, he having graduated from that institution in 1926. Since that time he has been a practicing physician and surgeon in good standing in the City of San Antonio, Texas, and in the general practice of his profession he has had extensive experience in the diagnosis and treatment of obstetrical cases. In the latter part of September, 1947, Mrs. Galutia contacted appellant and arranged with him to attend her at the birth of her child which was expected to occur about two months hence. She was about 32 years of age at that time and had previously given birth to two children in the State of Washington. Her first child was born in November of 1941 and lived only seven and one-half hours. The second child was born in November of 1942 and was a normal, healthy child at the time when this case was tried. She gave appellant a complete history of her prior experiences at childbirth and related many statements made to her by the doctors and nurses who attended her during those experiences.

Mrs. Galutia entered Santa Rosa Hospital in San Antonio at about 8:00 o'clock P.M. on November 12, 1947, under the care of appellant. Her labor, as in her prior experiences, was not steady or strong. She was given "pitocin" which was intended to increase labor. She would have pains for a limited time and then quit. She was taken to the delivery room in the hospital several times, but labor was not sufficiently strong or advanced to bring about the birth of the child. She was in the delivery room on the morning of the 16th at which time she was placed under an anesthetic. She was later returned to her room in the hospital where she remained until about 8:00 o'clock P.M. on the same date when she was again returned to the delivery room. Appellees introduced in evidence a statement which was signed by appellant and entered in the hospital records showing what happened to the patient during the evening of November 16th, the statement being as follows: "Patient was given a general anesthesia. Examination was made which showed that this baby's head was high. Forceps were considered, but it was decided it would not be practical to apply forceps to the head as high as it was. Due to the fact that the patient had been in labor four days and the patient had adequate room it was thought best to do a version extraction. A deep ether anesthesia was given and hand placed up into the uterus. A very strong Bandl's ring was encountered, which would not relax even in extreme anesthesia. Nevertheless, an attempt was made to reverse the baby. Despite repeated attempts and despite the fact that the foot was drawn down to the head, the baby could not be diversed from a vertex position. In doing this cord was found to be wrapped around the baby's neck. This became loosened and cord prolapsed. This was divided between the head and the bony parts of the pelvis, which cut the baby's blood supply off. It was then decided to do a Caesarean section. Patient

was brought to the operating room still under anesthesia and transfusion was started."

◼ In the recent case of Bowles v. Bourdon, Tex.Sup., 219 S.W.2d 779, 782, the Supreme Court of Texas said: "It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries. Kaster v. Woodson, Tex.Civ.App., 123 S. W.2d 981 (er. ref.); Floyd v. Michie, Tex. Civ.App., 11 S.W.2d 657; Kootsey v. Lewis, Tex.Civ.App., 126 S.W.2d 512; Barker v. Heaney, Tex.Civ.App., 82 S.W.2d 417 (er. dism.); Phillips v. Wright, Tex.Civ. App., 81 S.W.2d 129 (er. dism.); Urrutia v. Patino, Tex.Civ.App., 10 S.W.2d 582 (er. dism.)" In the case now before this court we must decide whether or not appellees properly discharged the burden of proof resting upon them under the foregoing rule. If they did not do so, then the judgment appealed from should be reversed.

◼◼ In order to prove that appellant was guilty of actionable negligence in failing to deliver the child by Caesarean birth on the morning of November 16, 1947, and delaying such operation until the evening of the same date, it was necessary for appellees to show by competent, admissible evidence that such failure and delay constituted a breach of the legal duty which appellant owed to his patient of exercising ordinary skill and care in his professional efforts properly to deliver the child. Expert medical evidence was essential to such proof because the matter of determining whether to use forceps in the delivery of the child, or to do a version extraction, or to do a Caesarean section and when or under what circumstances, if at all, a reasonably skilful physician and surgeon would or should have resorted to any or all of these various alternatives, involved the practice of a highly specialized art and a learned profession with respect to which no layman could have any personal knowledge or experience upon which the court and jury might rely for guidance. Therefore, proper, expert medical evidence was a necessary element in and an essential part of the proof required of appellees in order to show negligence and proximate cause. Wigmore on Evidence, Vol. XII, p. 453, Sec. 2090; 41 Am.Jur., p. 203, Sec. 85; 48 C.J. p. 1118, Sec. 104; Annotation, 59 A. L.R. p. 884; Bowles v. Bourdon, Tex.Sup., 219 S.W.2d 779.

◼ Appellant was called as a witness by appellees. He was the only medical expert witness who testified in the case. He was interrogated fully and in detail on direct and cross examination as to what he did in the diagnosis and treatment of Mrs. Galutia and as to why he followed the course of procedure which he described, his testimony covering more than 135 pages in the statement of facts. He did not testify to any fact or facts which in our opinion showed or tended to show that he was guilty of negligence in failing to perform a Caesarean operation sooner than he did. On the contrary, we think his testimony as a whole completely exonerates him of these charges. He testified that no doctor had the right to perform a Caesarean operation unless the facts in the case indicated that such operation was necessary and that he and his professional associates and consultants thought Mrs. Gulutia could have the baby normally until the evening of November 16th when the operation was performed. The following questions and answers are typical of his testimony as a whole: "Q. During the course of your treatment of this woman did she ask you to take the child by Caesarean? A. Many times. Q. Why didn't you do it? A. Because I thought my judgment was better than hers." If in fact appellant was using his best judgment in the diagnosis and treatment of his patient and if in good faith he was exercising that degree of skill and ability which constituted good practice according to the standard of the medical profession in San Antonio and vicinity, then as a matter of law he was not guilty of malpractice or negligence and was not legally liable to appellees for damages flowing

180

from bad results, if any, of his diagnosis or treatment.

 Mrs. Galutia was permitted to testify over timely objection that the doctor who attended her at the birth of her second child in Seattle, Washington, told her that she had "uterine inertia" and "that no woman should be allowed in labor over thirty-six hours at most, and that in my case, in view of my former experience, he would not allow me to labor longer than twelve hours." She was further permitted to testify that the nurse who attended her at the birth of her second child "told me I was torn worse than any woman she had ever seen." The ground of objection to the foregoing testimony was that such statements constituted hearsay evidence. We think the objections thus interposed should have been sustained. However, regardless of whether the admission of such testimony did or did not constitute reversible error, since it was merely hearsay evidence it had no probative force in support of appellees' allegations of negligence.

Mrs. Galutia also testified that she wanted the child delivered by Caesarean operation and that she requested appellant repeatedly from November 14th to perform such operation. Her testimony in this respect was corroborated by that of her mother and sisters. This testimony, together with the hearsay evidence to which we have already referred, must have been the basis upon which the jury made its findings of negligence because the jury found that appellant was not negligent in failing to take X-ray pictures of Mrs. Galutia prior to November 14th, and that he was not negligent in failing to take the child by Caesarean birth either on November 14th or on November 15, 1947. Although Mrs. Galutia and her relatives wanted the operation to be performed sooner than it was, we do not think such desire on their part, irrespective of the reasons or motives which might have prompted the same, was sufficient to form the basis for a legal inference of negligence on the part of appellant in failing to perform the operation sooner than he did.

After due consideration of all the competent, admissible evidence in the case, we have concluded that the same was and is wholly insufficient to sustain the findings of the jury with respect to actionable negligence on the part of appellant in failing to deliver the child by Caesarean birth on the morning of November 16, 1947, or in delaying the Caesarean operation until the evening of that day. Floyd v. Michie, Tex.Civ. App., 11 S.W.2d 657; Devereaux v. Smith, Tex.Civ.App., 213 S.W.2d 170 (er. ref. n. r. e.); Brown v. Shannon West Texas Memorial Hospital, Tex.Civ.App., 222 S. W.2d 248 (er. ref. n. r. e.); Simms v. Gafney, Tex.Civ.App., 227 S.W.2d 848 (er. ref. n. r. e.); Ewing v. Goode, cc., 78 F. 442.

Accordingly, the judgment of the trial court is reversed and the cause is remanded to the court below for further proceedings not inconsistent with the views herein expressed. Reversed and remanded.