Gerney G. HENDERSON, Appellant,

v.

Stuart A. MASON, Appellee.

No. 5686.

Court of Civil Appeals of Texas.

El Paso.

Dec. 9, 1964.

Gordon F. Johnson, Odessa, for appellant.

Shafer, Gilliland, Davis, Bunton & McCollum, James M. O'Leary, Odessa, for appellee.

FRASER, Chief Justice.

This is a malpractice suit filed by plaintiff-appellant against defendant-appellee, charging that defendant was negligent and that such negligence was the proximate cause of the loss of sight in appellant's right eye. At the close of testimony the trial court withdrew the case from the jury and entered judgment for defendant, holding that the plaintiff take nothing.

The facts, generally, are that on or about 8:00 or 8:30 on the evening of February 11, 1961, while working on a job at Andrews, Texas, the plaintiff received some sort of eye injury (as set forth in his petition). It appears that a piece of steel was imbedded in his right eye. Plaintiff was taken to Odessa, Texas to the Medical Center Hospital, for emergency treatment. It appears that a registered nurse on duty, after questioning the plaintiff, called the defendant, who was on voluntary duty in the emergency ward. It is alleged that defendant shone a flashlight in appellant's right eye, put some drops in the eye, and discharged him. This treatment takes some twenty to thirty minutes. Further, that later on in the same evening, appellant's eye began bothering him, and his wife tried to contact an eye surgeon, but was not successful in so doing until 9:00 of the next morning, which was Sunday. Appellant was seen and X-rayed by and under the instructions of one Dr. Carson, about noon of Sunday, at which time he was hospitalized. The following Monday morning the eye surgeon, Dr. W. T. Carson, operated on appellant and, by use of a magnetized instrument, removed a small piece of steel from the eye of appellant. Appellant later went to and was treated by a Dr. John Sheets, who testified that, to the best of his recollection, it was in April of the same year that plaintiff came to him. He further testified that plaintiff had no sight in his right eye other than to distinguish between light and darkness.

Appellant presents five points of error. Point 1 is to the effect that the trial court erred in holding, as a matter of law, that there was no evidence, or insufficient evidence, to show defendant guilty of any acts of negligence connected with his treatment of the appellant. Point 2 alleges error because the trial court found that there was no competent legal evidence, or there was

insufficient legal evidence, from a medical doctor of the same school as defendant-appellee showing, or tending to show, that appellee had been guilty of negligence. Point 3 alleges error by the court in holding that there was no evidence, or wholly insufficient evidence, to show or tend to show that any act or omission of appellee was a proximate cause of the injury and damages to appellant. Point 4 charges error in the court's holding that there was no evidence, or insufficient evidence, from a doctor of the same school as appellee showing, or tending to show, that any act or omission of appellee was a proximate cause of the injuries and damages to appellant; and Point 5 charges that the trial court erred in finding and holding, as a matter of law, that there was no competent, or, insufficient evidence from a doctor of the same school as appellee to distinguish among several possible causes of the injuries and damages to appellant.

Because the court rendered a verdict in favor of the defendant, we must consider the evidence that is favorable to the party against whom the verdict is rendered, and discard other evidence and inferences. As stated in Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422, a peremptory instruction is warranted only when the evidence is such that no other verdict should be rendered. This matter is also discussed by our Supreme Court in Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W. 2d 60, where the court says that a determination of such law questions must hinge upon acceptance of the evidence and the inferences therefrom in their aspects most favorable to appellant's case, and a discarding of contrary evidence and inferences. On the basis of the law stated above, we are compelled to make a thorough examination of the entire record, and to pay most careful attention to the evidence as set forth in the Statement of Facts.

This examination reveals that the defendant did flash a light into appellant's eye and did insert some antibiotic drops. The plaintiff himself admits in his testimony that his wife started calling an eye surgeon within an hour or an hour and a half from the time he was treated by defendant. Also, that defendant told plaintiff that if he had any further trouble, he should get in touch with an eye specialist, and the record shows the following:

"Q Now, from that of course, you knew that he was not an eye specialist himself?

"A I gathered that, sir."

Appellant claims that the defendant did not properly diagnose his condition and did not take advantage of an instrument called an opthalmoscope, nor order an X-ray of the eye. These facts are undisputed, the defendant stating in his testimony that he had never done an eye operation and had never treated any serious eye ailment; that he was primarily an internal medicine or heart and chest man, on voluntary duty in the emergency room. This is substantiated by the above quoted statement from the plaintiff himself, in which he says he "gathered" that defendant was not an eye doctor. Further, appellant says that within an hour or an hour and a half, his wife was trying to locate an eye surgeon. Appellant maintains that the delay between Saturday night and Monday morning was caused by improper diagnosis and treatment by the defendant, and that it was a proximate cause of the loss of his eye. This is flatly denied by appellant's own witness, Dr. Carson, who did the surgery on Monday morning. Dr. Carson testified as follows:

"Q In other words, it is your testimony then that the period of elapsed time until you took out the piece of steel in question on Monday was not material?

"A That's right."

Earlier, Dr. Carson had testified regarding the length of time the metallic object remained in appellant's eye. His reply was, "I don't think it had any effect whatsoever."

With these facts in mind, particularly statements by appellant and his own witnesses, it is clear that appellant knew defendant was not an eye surgeon; and the eye surgeon who did operate on appellant, and who was his own witness, stated definitely that the length of time elapsing between the injury and the operation had nothing to do with the loss of vision in his right eye. Also, defendant admitted that the opthalmoscope was there and available, and that there was, somewhere in the hospital, an X-ray machine, but that in his judgment at the time he saw appellant an X-ray was not necessary. He further testified that the opthalmoscope was largely used in determining medical conditions in the eye such as hypertension, etc. Appellant makes mention of the fact that the defendant was paid a fee of $10.00. It appears that this fee was paid by appellant's employer.

We think this case must be affirmed for the following reasons. The law presumes that the physician has done his work properly, and he is not considered by the law to be a guarantor or insurer. His obligation is to use his best judgment, both in diagnosis and treatment, and the plaintiff can recover only when it can be affirmatively shown—and this is the burden of the plaintiff—that the diagnosis or treatment was not an error in judgment, but a matter of negligence, and that such negligence was the proximate cause of the damages claimed by plaintiff. There is no question but what the burden is on the plaintiff seeking damages; and the courts have held that the alleged negligence must be established by testimony of expert witnesses, the only exception being a type of negligence that is obvious to the untrained layman, such as leaving surgical instruments or sponges in the incision, or operating on the wrong portion of the body. In Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1 (1949), our Supreme Court stated as follows:

"It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries. * * *" (and cases cited).

There are several textbooks that deal with this same problem, as well as articles in law reviews, holding that expert testimony is absolutely essential except where the matter or injury is so plain as to be within the common knowledge of laymen. These texts and articles reiterate and emphasize that where the lawsuit or the issues deal with the prevailing standard of skill and learning in the community, the usual or proper practice in diagnosis and treatment of a particular injury or disease, the propriety of particular conduct of the physician or want of professional skill—expert testimony favorable to plaintiff is indispensable, and that without such, a plaintiff cannot recover. It has also been asserted that the physician is not responsible for an error in judgment. It is clear from the evidence here, even though we view it most favorably to appellant, that there is no expert testimony that defendant was negligent in any way in his diagnosis and treatment of the injury. With regard to the use of the opthalmoscope, the defendant's testimony (that it would not be of any value in this particular type of case because it does not magnify sufficiently to be of any help) stands undisputed. Viewing the evidence as a whole we cannot find, even by giving the most favorable construction possible, that the defendant was guilty of any negligence, either in diagnosis or treatment. Even though appellant accuses him of an error in judgment, the law does not hold the physician responsible for such unless it amounts to negligence, and there is none shown here by any testimony. There is no expert testimony by expert witnesses in the same vicinity as to the standard of what constitutes accepted and proved prac-

tices in matters of this type. Appellant himself admits in his brief that this is the rule. Further, the testimony of Dr. Carson, who did the surgery, is undisputed that the lapse of time from Saturday night until Sunday noon, when he saw the patient, and Monday morning when he operated, had nothing whatever to do with the loss of plaintiff's eye. The evidence also indicates, therefore, that the loss of sight might be due to some other reason, such as the actual penetration of the fragment of steel. For these reasons we hold that plaintiff has failed to meet the burden he assumed when he charged the defendant with negligence in diagnosis and treatment. Davis v. Virginian Railway Co., 361 U.S. 354, 80 S.Ct. 387, 4 L.Ed.2d 366; 22 T.L.R. 357; Prosser on Torts, 134 and 197; 45 Tex.Jur.2d, Sec. 131, pp. 304, 306; Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949); Christian v. Galutia, 236 S.W.2d 177 (Tex.Civ.App., n. r. e.); 45 Tex.Jur.2d, sec. 129, pp. 299, 300.

We have examined appellant's cases, but do not believe them to be in point when considered with the facts here present. In Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311, by the Supreme Court (which is cited by appellant), the defendant himself testified that if he or any doctor touched the eyeball with an electric apparatus used for the purpose of treating a condition of the eyelid, such would be negligence. He then denied having done this; and so there we have the defendant himself defining negligence and the jury finding him guilty of it; and of course it was an affirmative act of negligence of which the jury found him guilty. This case also illustrates the principle where the injury involved was to a portion of the body not within the field of operation. The other cases cited by appellant do not sufficiently support his position, and we do not wish to burden this opinion with a discussion of each of them.

■ It is also clear from the record that appellant was never able to prove that any negligence or alleged negligence on the part of the defendant was the proximate cause of the loss of vision in his right eye. We have viewed this evidence and considered it as favorably as possible to appellant, but there is no evidence that the diagnosis, treatment, or lack of treatment on the part of the defendant was the proximate cause of the loss of vision. As stated above, appellant's own witness, Dr. Carson, stated that the lapse of time from Saturday night to Monday morning had nothing to do with the loss of vision. Dr. Carson testified as follows:

"A  Yes, because it hadn't been in there long enough to break down and hadn't been long enough for it to start an inflammatory reaction, and there was no evidence that there was any of either of those present in his eye."

Under cross-examination Dr. Carson stated that, in his opinion, the cause of loss of vision was due to the injury itself, in that appellant had a piece of metal propelled into his eye which hit a blood vessel in some back area of the eye, which blood vessel ruptured causing bleeding into the vitreous. The doctor further testified that he didn't notice any injury on his first examination, and found the injury by the use of a Slit Lamp microscope.

Again referring to the case of Bowles v. Bourdon, supra, our Supreme Court says:

" * * * 'The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this court and by other courts.' Ramberg v. Morgan, 209 Iowa 474, 218 N.W. 492, 498."

The same case is cited in 45 Tex.Jur.2d, Sec. 131 at page 306, for the proposition that "where the only expert medical testimony in a malpractice action expresses the opinion that the defendant's treatment was not the proximate cause of the injury complained of, and there is no expert opinion to the contrary, a directed verdict for the defendant is proper." Also see 70 C.J.S. Physicians and Surgeons § 62, page 995, which states:

"Where two causes, the original injury and the improper treatment, are co-operating to produce the final result, plaintiff in order to recover for malpractice must adduce evidence to show that proper treatment would have produced a better result, and the jury cannot be allowed to speculate on the relative amount of injury due to the original injury and that due to malpractice."

Therefore, by way of summary, it is clear that the evidence, viewed in the light most favorable to appellant's position, fails to prove any negligence on the part of the defendant and fails to prove that, had there been any negligence, such was *the* proximate cause of appellant's injuries; not one of several, but *the* only one. Also, we repeat—as the cases above cited hold— a doctor is not required to respond in damages for errors in judgment or treatment unless the same constitutes negligence. In the case before us there is also the lack of proper testimony from experts in the same field and vicinity. The injury involved here is not one such as the ordinary layman could determine to have been caused by negligence which was a proximate cause of the damage. In other words, it is an injury calling for expert testimony, of which there was none favoring appellant's position, although two different eye surgeons did testify as appellant's own witnesses. It is elementary, of course, that a party is bound by the testimony of his own witnesses.

For the reasons hereinabove set forth, all five points presented by appellant are overruled, and the decision of the trial court is in all things affirmed.