**L. R. THOMAS, Appellant,**

v.

**Dr. H. H. BECKERING, Appellee.**

**No. 137.**

Court of Civil Appeals of Texas.

Tyler.

May 27, 1965.

Rehearing Denied June 24, 1965.

Otto B. Mullinax, Mullinax, Wells, Morris & Mauzy, Dallas, for appellant.

James A. Williams, Bailey & Williams, Dallas, for appellee.

MOORE, Justice.

This is a malpractice suit filed by L. R. Thomas, appellant, against Dr. H. H. Beckering, appellee. Appellant alleges that the doctor was negligent in treating a compound fracture to his right index finger causing a malformation. In substance, appellant alleges that after having attempted to reduce the fracture by a manual manipulation, the doctor thereafter negligently failed to x-ray the finger in order to determine whether the bones were properly aligned and also that the doctor negligently failed to apply traction on the finger so as to hold the bones in proper alignment while healing. He further alleged in the alternative that Dr. Beckering falsely represented to him that he had successfully secured a proper alignment and that in reliance upon this representation, he was prevented from securing further medical attention until the bones had healed to such an extent that it was too late to correct the condition and that as a result of the doctor's misrepresentations, his right index finger healed in a malformed condition and was rendered useless. Dr. Beckering answered with a general denial and in addition thereto alleged that he had followed the approved techniques and procedures utilized generally by physicians in Dallas County, Texas, in the treatment of fractures and that the resulting condition of the appellant's finger was not caused by any negligence on his part.

At the close of the testimony appellee made a motion for an instructed verdict alleging that appellant had presented no evidence showing that the doctor had failed to exercise that degree of care and caution which would have been exercised by a practicing physician of the same school of medicine in Dallas, Texas, in the diagnosis and treatment of the appellant's injury and therefore failed to show that the doctor's negligence, if any, was the proxi-

mate cause of the plaintiff's injury and damage. The trial court granted the motion and withdrew the case from the jury and rendered judgment for the appellee, Dr. Beckering.

Appellant, L. R. Thomas, duly prosecuted his appeal and now brings forward three Points of Error contending that the trial court erred in granting judgment for appellee and in holding that as a matter of law there was no evidence to raise a jury issue that appellee's negligence proximately caused appellant's injury and damage.

■ Because the court withdrew the case from the jury and rendered judgment, we must accept the evidence and the inferences to be drawn therefrom in a light most favorable to the appellant and disregard any contrary evidence and inferences. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60; Henderson v. Mason, 386 S.W.2d 879, (Tex.Civ.App.).

In substance, the facts show that on April 16, 1963, appellant's right index finger was severely crushed while he was attempting to unload a piece of equipment known as a camper from the bed of a pick-up truck. He immediately reported to the offices of Dr. Earl Olmstead, who determined upon examination that appellant had suffered a severe crushing injury to the finger causing two extreme lacerations on the anterior lateral and on the posterior lateral aspect of the finger, measuring approximately two and one-half inches in length requiring same to be sutured; that the condition at that time was such that the doctor's immediate concern was to save the finger rather than attempt to reduce the fracture. Dr. Olmstead splinted his finger and instructed him to report back in a few days; on the second visit Dr. Olmstead found the circulation to be extremely poor; it was infected and extremely swollen. He prescribed antibiotics for the infection and made only minimal attempts to reduce the fracture. He continued to x-ray the finger and give antibiotics until April 29, at which time he concluded that the tissue and the blood supply was adequate to maintain life in the finger and should be referred to the attention of an orthopedic surgeon. He directed appellant to Dr. George Sibley, an orthopedic surgeon in Dallas. On April 30 appellant reported to Dr. Sibley, taking Dr. Olmstead's x-rays. Dr. Sibley advised that in view of the swelling and infection it would be necessary that appellant be confined to a hospital so that treatment could be administered to cure the infection and reduce the swelling prior to attempting a reduction of the fracture. On the same date, April 30, appellant was admitted to the Methodist Hospital. On May 3, he voluntarily left the hospital without the consent of Dr. Sibley and reported back to Dr. Olmstead, stating that he had left the hospital because he felt that Dr. Sibley was neglecting him. Dr. Olmstead recommended that he see another specialist. He then reported to Dr. Beckering, appellee herein.

Dr. Beckering testified that he first saw appellant on May 3, 1963; that upon examination he found that appellant had a severely injured finger; it was swollen, deformed, infected and the circulation therein was very poor; that after his examination there was some question in his mind as to whether the finger could be saved, but that he determined that it was worth a try. Although he did not make any x-rays on the occasion of this visit, he cleaned it and treated the same with chymar ointment so as to help combat infection and debride it; that on May 6 and 8 he again saw the appellant and applied a dry dressing because he was of the opinion that the infection was then under control. That on May 10 he x-rayed appellant's finger and recommended a plan of treatment whereby he would try to manipulate the finger and thus place the bones in a better position and told appellant that if this failed, he would then put it in traction. Appellant consented to this course of action and was admitted to Baylor Hospital on May 13 and was placed under a general anesthetic. Dr. Beckering testified that al-

though he attempted to manipulate the bones of the finger in a better position, he was unable to place them in proper alignment because of the extreme swelling of the finger and therefore he concluded that under the circumstances a complete correction of the bone was not possible by manipulation. He further concluded that the appellant was going to suffer from a stiff finger and that the best course of action was to manipulate the joints in such a manner so as to curve the finger downward toward the thumb so that the same would be usable to some extent rather than to have the same stiffen in a straight position. That he did so manipulate the joints and place them in a cast in this position; he testified that he did not move the fracture at all, but only bent the joints of the finger downward toward the thumb. He admitted that he did not x-ray the finger in the operating room to confirm the position of the bones, because he felt that he had not been able to change their position by manipulation. He testified that he told the appellant that he had not moved the fractured bones. Dr. Beckering testified that in view of the infection in the finger, he was unable to put the same in traction because he felt that the pin which would be necessary to place in the end of the finger would pull through the finger because of its infected and deteriorated condition. He further testified that on June 5 he x-rayed the finger and it showed a malposition of the fracture with healing taking place and that a comparison of this fracture with the picture made by Dr. Olmstead on May 10 showed the fractured bone to be in identically the same position; that by June 5 the new growth had formed between the fractured bone to such an extent that it would require breaking the bones into again in order to attempt to place them in better alignment.

Appellant called both Dr. Olmstead and Dr. Sibley as witnesses. A review of Dr. Olmstead's testimony shows that his testimony relates only to the facts surrounding his treatment to the appellant. Nowhere in his testimony have we been able to find where he testified that Dr. Beckering did anything or failed to do anything that caused the injury of which appellant complains. Nor have we been able to find anything in the testimony of Dr. Sibley that would indicate that Dr. Beckering's treatment caused the injury complained of by appellant. Although Dr. Sibley did testify that "one" of the standard methods of treatment of fractures was the application of traction, and that the standard method of treatment after reduction of a fracture required the use of an x-ray in order to determine whether the bones were in proper alignment, nowhere in his testimony have we been able to find where he testified the resulting malformation of appellant's finger was caused by the failure to x-ray or to place the same in traction.

Appellant Thomas testified that Dr. Beckering advised him that he felt that he could reduce the fracture and bring the bones in proper alignment, but that the doctor also told him there was a possibility that the finger would be stiff, and in the event that it was stiff, he would place it in such a position that he would have some motion in it. Subsequent to the attempted reduction, he testified that the doctor told him he had gotten good alignment and that he would have a good finger; however, on June 5 when the doctor took the last x-ray, the doctor stated that the alignment was not too good, but that he, Thomas, was going to get out of the situation a lot better than he originally expected. He testified that he continued to rely upon Dr. Beckering's assurance that he would have a good finger until June 3 at which time he got suspicious and went back to Dr. Olmstead for additional x-rays; that upon finding that these x-rays showed the bones were not in alignment, he consulted a Dr. Girard on June 5 and that on the same date he again visited Dr. Beckering, and since that date he has not tried to get other treatment. With these facts in mind, we now turn to the law.

■ It is well settled that the law entertains in favor of a physician, or surgeon, the presumption that he has discharged his full duty, and to overcome such presumption the law exacts affirmative proof, both of breach of duty and that such breach resulted in injury. Negligence, in such cases, is never imputed from mere results, nor can any inference of negligence be indulged against a physician or surgeon from the results. Floyd v. Michie, 11 S.W.2d 657, (Tex.Civ.App.); Phillips v. Wright, 81 S. W.2d 129, (Tex.Civ.App.), err. dism.

The same principle was restated by the Supreme Court in Bowles v. Bourdon, 148 Tex. 15, 219 S.W.2d 779, wherein the court stated as follows:

"It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries. * * *" (Citing cases.)

Accord: Christian v. Galutia, 236 S.W.2d 177, (Tex.Civ.App.); Henderson v. Mason, supra; Hart v. Van Zandt, 383 S.W.2d 627, (Tex.Civ.App.).

■■ It is now a generally recognized rule that in malpractice cases, as in other actions based upon negligence, a plaintiff must plead and prove not only that he has been injured and that the defendant has been at fault, but also the causal connection between the two, and that expert testimony upon the want of care or skill is absolutely essential except in cases where the want of care or skill is so obvious as to be within the comprehension of a layman. Obviously, from the testimony hereinabove set forth, this cause does not fall within the exception to the rule.

Since the burden of proof is upon the appellant to prove both negligence and

proximate cause in order to establish a cause of action, we do not undertake to decide the question of whether there is any competent evidence of negligence in appellee's treatment of the fracture, but will pass to the issue as to whether there is any medical testimony showing that the treatment is the proximate cause of malformation of the appellant's finger.

■ We have carefully reviewed all of the evidence as set forth in the statement of facts in a light most favorable to appellant and have been unable to find anything in the testimony of Dr. Olmstead or in the testimony of Dr. Sibley that the negligence, if any, in failing to apply traction or the negligence, if any, in failing to make additional x-rays immediately after attempting to reduce the fracture, either caused or contributed to cause the injury complained of by the appellant. In fact, there is a complete absence of any testimony upon the question of causation.

As pointed out before, appellant reported to Dr. Beckering some seventeen days after the injury. At that time there was some question as to whether the finger could be saved. It had been severely crushed; it was swollen, infected and the blood circulation was poor.

■ A physician is not responsible for the effects of the disease or injury, except insofar as they could have been avoided by proper treatment. Proof of proximate cause ordinarily involves the problem of distinguishing between the various causes suggested by the evidence.

■ In the case before us, we think it apparent from the evidence that there could have been two possible causes cooperating to produce the final result—one, the severe compound fracture, accompanied by infection, swelling and poor circulation; and the other, the alleged improper treatment. The burden is upon the plaintiff in a malpractice case to prove that the injury he complains of resulted from the negligent treatment and not the original injury. Barker

v. Heaney, 82 S.W.2d 417, (Tex.Civ.App.) err. dism.; Phillips v. Wright, supra; Kootsey v. Lewis, 126 S.W.2d 512, (Tex. Civ.App.); Devereaux v. Smith, 213 S.W. 2d 170, (Tex.Civ.App.); Connelly v. Cone, 205 Mo.App. 395, 224 S.W. 1011; 13 A.L.R. 2d 1.

" * * * Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this court and by other courts. * * *" Ramberg v. Morgan, 209 Iowa 474, 218 N.W. 492, 498; Bowles v. Bourdon, supra.

Thus in the absence of any expert testimony on causation, the jury would be compelled to guess or speculate on the question of whether the malformation of the appellant's finger was due to the fracture with the attendant complications, or whether it was due to malpractice. There being no evidence of causation, we therefore conclude that the action of the trial court in instructing a verdict for appellee was proper.

Appellant's alternative plea alleges fraud on the part of Dr. Beckering in falsely representing to him that he had brought about a good alignment and that the two ends of bone had been moved in their proper place. Appellant testified that the doctor made such statement and that he relied thereon and did not seek other medical treatment.

■ Viewing the evidence in a light most favorable to appellant, as we are required to do, and assuming such statement was made and same was false, we are nevertheless of the opinion that the evidence does not disclose that there was any fraud committed which would give rise to a right of action independent of malpractice. Whether the cause of action be for malpractice or fraud, the element of causation is essential. In the case of fraud, there must be a causal connection between the statement and the damages sustained. Allison v. Blewett, 348 S.W.2d 182, (Tex.Civ.App.); citing Hayden v. Dunlap, 84 S.W.2d 306, (Tex.Civ. App.); 37 C.J.S. Fraud § 42, p. 296; 24 Am.Jur., p. 48, Sec. 218; 13 A.L.R.2d 1; See also Netzel v. Todd, 24 Ohio App. 219, 157 N.E. 405 (Ohio).

Appellant claims injury by reason of the false statement in that he was deprived of the beneficial effect of proper treatment, and but for such statement he would not have suffered injury. There was no proof showing that because of the false statement, appellant was caused to suffer a malformation of the finger, or that but for such statement, he could have secured another doctor who could have obtained a better result. Causation not having been established, an instructed verdict was proper.

For the reasons stated, appellant's Points are overruled and the judgment of the trial court is affirmed.

Affirmed.