Rollie B. HAMILTON, Appellant,

v.

Dr. Ralph LILES et al., Appellees.

No. 14820.

Court of Civil Appeals of Texas.

Houston.

May 26, 1966.

John H. Holloway, Houston, for appellant.

Baker, Botts, Shepherd & Coates, Finis E. Cowan, Houston, for appellees.

WERLEIN, Justice.

This suit was brought by appellant, Rollie B. Hamilton, against Dr. Ralph Liles and Dr. Charles Wolf, individually and as partners, to recover damages allegedly resulting from the negligence of the appellees in failing to discover an alleged ruptured or severed Achilles' tendon in appellant's left leg. At the conclusion of all the evidence, the court withdrew the case from the jury and entered judgment in favor of appellees on the ground that appellant had not introduced sufficient evidence to allow issues to be submitted to the jury on negligence and proximate cause. In determining whether the court erred in withdrawing the case from the jury and entering judgment for appellees, this Court must look to the testimony most favorable to appellant's contention and reject all that tends to disprove it. A peremptory instruction may properly be given only when there is no issue of fact in the case. Elder v. Aetna Cas. & Surety Co., 1951, 149 Tex. 620, 236 S.W.2d 611; Johnson v. Peckham, 1938, 132 Tex. 148, 120 S.W.2d 786, 120 A. L.R. 720; White v. White, 1943, 141 Tex. 328, 172 S.W.2d 295.

The evidence shows that on or about November 28, 1961, appellant consulted Dr. Charles Lee Wolf in connection with pain in the lower part of the back of his left heel. At such time the leg was sore and there could have been some swelling. Dr. Wolf diagnosed the condition as Tenosynovitis as the result of too much walking engaged in by appellant on hunting trips. Dr.

Wolf found no swelling but gave appellant an anti-inflammatory drug and advised him that it would be all right to go back to his deer hunting. There is no evidence that the treatment given appellant at such time was in any way improper or that it contributed to the injury later sustained by appellant.

At about one o'clock in the morning on January 1, 1962, appellant, while playing with his dog, side-stepped a lunge by the dog and immediately heard a sound like a little track gun or a .22 going off, and his leg went out from under him. He was helped into his home and in a few minutes he felt severe pain, and the calf of his left leg drew up in a knot. Appellant's wife spent the night rubbing and massaging appellant's leg and during this process she felt the muscles knotted up in the back of his leg  She testified that she felt what she described as "kindly a dent in this place, but I didn't know what it was for." She did not pay much attention to it and did not mention it to Dr. Liles on the morning of January 1, 1962, when he first saw appellant. Dr. Liles examined appellant's leg and found that it was considerably swollen and in fact was swollen to the extent that there was an extra half to three-quarters of an inch added to the diameter thereof.

There is considerable dispute concerning the extent of the examination made by Dr. Liles. Dr. Liles testified that he palpated the calf and the tendon area, took appellant's temperature, and tested the appellant for Plantar flexion. On the other hand, appellant testified that his calf was so sore that one could hardly touch it, and that Dr. Liles asked him to put his foot in his hand and press against it, and also that Dr. Liles hit the bottom part of his foot with his hand and when he did appellant came very near passing out. Both appellant and his wife testified in effect that Dr. Liles did not palpate along the tendon in the back of appellant's leg. After such examination, the evidence is that Dr. Liles applied an Ace bandage to appellant's leg and

gave appellant a set of crutches and told him to keep hot packs on it and stay off of his feet for fourteen days and then come back to the office.

Fourteen days later appellant went back to the office and returned the crutches. Between such time and January 23, 1962, appellant made a trip to New Orleans, but he still had a lot of pain and discomfort. He made most of his business calls from his bed. He was able to get around if he walked without bending his leg and by keeping his leg stiff and putting weight on his heel. On January 23 he again called on Dr. Liles to advise him that he was still hurting and couldn't walk on his foot, and had to walk on his heel. Appellant's testimony is to the effect that Dr. Liles re-examined him by placing his foot in his hand and asking him to push on it; that no x-rays were taken, no bandages put on the foot, or shots given, and that the doctor told him to take it easy and do as little as possible, which he did.

Appellant also testified that Dr. Liles did not on January 1 or on January 23 tell him that there was any separation of the Achilles' tendon or that he needed any operation. About the middle of February, 1962, while in the bathroom, appellant noticed an indentation in his leg behind his ankle in the left heel section, but he did not pay much attention to it at first and did not seek medical advice. On or about February 25 or 26 he went to see Dr. Peyton Barnes, who made a slight examination and referred him to Dr. De Young, who also examined him. He was then referred to Dr. Michael Donovan by one Dr. Bauer. Dr. Donovan indicated he needed surgery when he first saw him on March 9, 1962, but appellant asked that the operation be put off a couple of weeks because he had some work to do. He went to the hospital on March 18, 1962, and was operated on on March 19.

It is appellant's contention that between January 1, 1962 and March 19, 1962, when the operation was performed, his leg hurt continuously, and that during such time he

also lost business by reason of having to be off his feet. He asserts that he is entitled to recover at least for the pain and suffering and lost earnings which he suffered by reason of the delay in the operation occasioned by Dr. Liles' failure to properly examine his leg, advise him that he had a separation of the Achilles' tendon and needed an operation.

Appellant's witness, Dr. Donovan, an orthopedic surgeon, testified that the operation would not have been different in any way if the repair to the ruptured tendon had been done sooner; that there was some scar tissue at the end of the tendons, which he excised; that there would not have been any scar tissue if the repair had been made at the time of the injury, but the scar tissue was of little significance; that he couldn't tell whether appellant had a complete rupture at the time of the injury on January 1, 1962; that a partial rupture could occur with the same symptoms which appellant had; that he could have had one of three things at such time, either a partial rupture of the heel cord, a ruptured heel cord, or a rupture of the Plantaris muscle, which is seen more often than a rupture of the heel cord; and that the delay did not make appellant's condition any worse. Dr. Donovan further testified that he could not have diagnosed the condition on January 1 or January 23 if the indentation did not show up or was not seen until the middle of February; that the facts as related to him indicated that a complete separation did not occur until the indentation or gap occurred; that the diagnosis in the early stages where there is only a partial separation of the tendon is extremely hard to make; and that 25% of ruptured heel cords are discovered late and repaired later, and they do well. He further testified that the treatment given appellant by appellees was very good treatment.

While there is a conflict in the testimony of the doctors and appellant concerning the thoroughness of the examination of appellant by Dr. Liles on January 1 and also on January 23, the evidence establishes that Dr. Liles' treatment of appellant was proper. On January 1 appellant was given a prescription for pain and also a prescription "to bring down the infection," evidently an anti-inflammatory drug. His ankle was immobilized with an elastic bandage and he was given crutches. He was instructed to go home, elevate his leg on a pillow and apply hot compresses and to return in fourteen days. Appellant testified in substance that on January 23, Dr. Liles re-examined his leg in the same manner as on January 1, 1962, and advised him that it might be a matter of months before it would heal and he could walk and have the full use of his foot; that he instructed him to stay off his foot as much as possible, and to do as little work as possible, and take it easy.

Appellees concede that an inference could be drawn that in January there was a partial severance of the Achilles' tendon, but they contend that there is no evidence that the partial separation, if it existed in January, could have been detected by any known diagnostic techniques. Except for the testimony of appellant's wife that on January 1 she felt what she described as "kindly a dent in this place, but I didn't know what it was for," and her testimony that she felt it until January 23, there is no evidence that any indentation could be felt or seen in appellant's leg until sometime in February. Appellant did not see any indentation until the middle of February. It is our view that the testimony of appellant's wife with regard to "kindly a dent" constituted no more than a scintilla of evidence that there was any indentation such as the doctors said would occur in the event of a severed tendon. Indeed, appellant's wife did not state where the dent was, how large it was or show that it was at the place where the indentation apparently later occurred, or give any testimony with respect thereto which would indicate that the indentation or gap described by Dr. Donovan as two inches in length occurred before appellant discovered it in the middle of February, 1962.

Dr. Liles testified that at the time of his last examination on January 23 a rupture did not exist, but that if there was any rupture it certainly was not a complete one. Appellant contends that based on such admission the jury could find that there was a partial separation at such time even if all other evidence is discounted. Appellant further asserts that Dr. Liles admitted that if while examining appellant he did no more than appellant testified he did, the examination would have been an incomplete examination. The dispute seems to hinge here upon the conflict in the testimony of appellant who testified that Dr. Liles did not palpate appellant's leg, and that of the medical expert, Dr. Liles, who testified he did.

The evidence is undisputed that on both January 1 and January 23 appellant's leg in the vicinity of the calf and ankle was swollen. Appellant did not return for observation by Dr. Liles after January 23, although the evidence is undisputed that he was told to be cautious in his activities and to return for observation as soon as he had finished the anti-inflammatory drug which had been prescribed. Dr. Donovan testified that one who still had inflammation and swelling would not be a candidate for surgery, and that he would not under normal circumstances operate until a definite, reasonably certain diagnosis could be arrived at. There is no evidence in the instant case as to when the swelling in appellant's left leg was gone. It was still there on January 23, according to the undisputed evidence, including appellant's testimony. Dr. Donovan testified that until a defect could actually be felt he would take no affirmative action except to observe the patient. He indicated that he would limit his activities by putting him on crutches, which is what Dr. Liles did on January 1. He also testified that he would put the patient on partial weight-bearing. This also was done by appellee, Dr. Liles, who instructed appellant to stay off his foot as much as possible.

Appellant contends that his suffering was prolonged by the fact that his condition was not sooner diagnosed and he was not sooner relieved by operation. If we assume that there was a delay of some kind and that during such delay appellant suffered pain and lost earnings, it is still impossible to determine the period of such delay. It would not have been proper for appellant to have been operated on at any time that he was in attendance upon Dr. Liles, since his calf and leg were still swollen. Whether the operation could have been performed any sooner than it was done is conjectural and speculative since there is no testimony as to when the swelling left the leg. Although appellant contacted Dr. Donovan on March 9 and was then advised that a repair job would have to be done, he requested that the operation be delayed some two weeks so that he could finish some work that he was doing. The operation was not performed until March 19, some 10 days after appellant contacted Dr. Donovan. We do not know whether there was any swelling in appellant's leg up to the date he saw Dr. Donovan, since we have no testimony from Dr. Peyton Barnes, or Dr. De Young, who saw appellant respectively on February 25 and March 6. In other words, it is entirely speculative as to whether or not the operation would have been performed any sooner than it was performed even though a complete rupture of the Achilles' tendon had been sooner discovered. Appellant has failed to show any specific period of delay for which appellees can be said to be responsible. There is nothing to indicate the number of days or weeks of delay. The specific time for scheduling surgery is a matter which lies within the discretion of the medical expert. We find no evidence in the record that it would have been proper to have operated on appellant's leg prior to the time that he saw Dr. Donovan on March 9; nor do we know whether the operation would have been performed even that early since it was not done until March 19.

In Bowles v. Bourdon, 1949, 148 Tex. 1, 219 S.W.2d 779, it was alleged that there was a delay in treatment occasioned by the doctor's failure to take proper action on the basis of the information given him by the patient's mother, and that the minor plaintiff would not have developed Volkmann's contracture had it not been for the failure of the defendant to loosen the cast after being informed that the patient's fingers were blue and cold. The Supreme Court decided the case on the basis that there was no medical evidence to support a conclusion that the failure to loosen the cast was a proximate cause of the minor's contracture, although two doctors testified that a too-tight cast would cause such condition.

In the instant case, appellant introduced no medical testimony to the effect that it would have been possible to shorten appellant's period of incapacity by performing additional diagnostic tests. The evidence is undisputed that appellant obtained a good result from surgery, and his only real claim is that his period of incapacity was increased for some unidentified period of time by failure of Dr. Liles to make a more complete diagnostic test.

In Caton v. Richardson, Tex.Civ.App. 1965, 387 S.W.2d 683, the defendant testified that before surgery he gave the plaintiff the Trendelenburg test to determine the adequacy of deep circulation. The plaintiff, on the other hand, denied that she had been given the test. The court, in upholding the summary judgment in favor of the doctor, stated, "If Mrs. Caton's testimony is true, and he (the doctor) did not do the test there still is no showing of negligence which was a proximate cause of the condition she complained about." In the instant case, it was not shown that if a more adequate examination had been made the swelling would have left appellant's leg and the operation would have been performed at an earlier date.

In Thomas v. Beckering, Tex.Civ.App., 391 S.W.2d 771, writ ref., n.r.e., the evidence showed that the doctor did not x-ray the patient's finger after setting it or placing it in traction to hold the bones in place, although the evidence showed it was standard procedure to do so. However, there was no medical testimony that taking such action would have prevented the bad result which the plaintiff suffered. The court affirmed an instructed verdict for the defendant because of the absence of medical testimony that such bad result was due to the failure to x-ray and place the bones in traction. The Court said:

"* * * in the absence of any expert testimony on causation, the jury would be compelled to guess or speculate on the question of whether the malformation of the appellant's finger was due to the fracture with the attendant complications, or whether it was due to malpractice."

In the present case in order for plaintiff to recover, a jury would have to speculate that there was a complete separation of appellant's Achilles' tendon in January of 1962, and that had a more thorough palpation been done it would have been discovered, and that it would have been possible and desirable to perform surgery at an earlier date, and that surgery would have been performed at an earlier date. See also Henderson v. Mason, Tex.Civ. App.1964, 386 S.W.2d 879. In Christian v. Galutia, Tex.Civ.App., 236 S.W.2d 177, writ ref., n.r.e., plaintiff contended that she had suffered damages by virtue of the fact that the defendant had allowed her to remain in labor for four days without performing a Caesarean section as she requested and which was finally done. The court said:

"* * * when or under what circumstances, if at all, a reasonably skilful physician and surgeon would or should have resorted to any or all of these various alternatives, involved the practice of a highly specialized art and a learned profession with respect to which no layman could have any personal knowledge or ex-

perience upon which the court and jury might rely for guidance. Therefore, proper, expert medical evidence was a necessary element and an essential part of the proof required of appellees in order to show negligence and proximate cause."

 We have examined the Texas cases relied upon by appellant, including several recently decided by this Court. They are all factually distinguishable from the instant case. Several of them involve a situation where the plaintiff got a bad result from negligent treatment by the doctor. In the present case appellant got a good result. His real complaint is that there was delay in the diagnosis of his condition and that he should have been sooner operated on and cured, despite the fact that there is no evidence with respect to when the swelling left his leg and no medical evidence as to when the operation could and would have been performed even if a more complete diagnostic test had been made. Wilson v. Corbin, 1950, 241 Iowa 593, 41 N.W. 2d 702, relied upon by appellant, is also distinguishable. In that case both negligence and proximate cause were inferable from an unwarranted delay of nearly three months in x-raying a fractured vertebra, whereas in the instant case there is no evidence that an x-ray or other diagnostic test would have disclosed either a complete or incomplete rupture of appellant's Achilles' tendon in January when he was examined by Dr. Liles.

In construing the evidence most favorably to appellant, we are of the opinion that the trial court did not err in withdrawing the case from the jury and entering judgment for appellees.

Judgment affirmed.

COLEMAN, J., not sitting.

On Motion for Rehearing

We have carefully considered appellant's motions for rehearing and for supplemental findings of fact and conclusions of law, and have also carefully reconsidered our opinion of May 26, 1966. We have concluded that the opinion fairly and sufficiently recites the controlling facts and the evidence most favorably to appellant. The additional findings requested by appellant relate to argumentative, conjectural and evidentiary matters immaterial to a correct disposition of this appeal.

Appellant's motion for rehearing is overruled and his motion for supplemental findings is refused.

COLEMAN, J., not sitting.