Lora Jean THOMAS et al., Appellants,

v.

**TRAVELERS INSURANCE COMPANY,**
Appellee.

No. 5917.

Court of Civil Appeals of Texas.

El Paso.

Dec. 27, 1967.

Rehearing Denied Jan. 24, 1968.

Huff & Bowers, and Robert W. Gauss, Lubbock, for appellants.

Turpin, Smith, Dyer, Hardie & Harman, Max Osborn, Lawrence L. Fuller, Midland, for appellee.

OPINION

FRASER, Chief Justice.

This is a workman's compensation case in which a widow brought suit in her own behalf and in behalf of her children for death benefits. The case was tried to a jury and, after the plaintiff rested her case, the court granted defendant's motion to remove the case from the jury and entered judgment that the plaintiff take nothing.

Plaintiff-appellant, in her two points of error, alleges that the trial court erred in removing the case from the jury and holding as a matter of law that plaintiff-appellant take nothing.

It appears that the deceased and his family were separated and that he was alone in his trailer-house, which was not located on the premises of his employer, when a fire occurred. The widow said she was two blocks away when she saw the fire and none of the children were present, so that there was no testimony as to what deceased was doing or as to how and when the fire started or what its origin was. We believe the trial court was correct in granting the motion for instructed verdict for the following reasons.

Article 8309, section 1, T.R.C.S., dictates that the term "injury" (after defining certain excluded injuries) shall include all other injuries having to do with and originating in the work, business, trade or profession of the employer, received by the employee while engaged in or about the

furtherance of the affairs or business of his employer, whether on the employer's premises or elsewhere. In the case before us, there was no evidence whatever except that the deceased was in his own trailer when it caught fire and he died therein. Appellant maintains that her husband had a telephone in the trailer, a removable two-way radio in the car, that he was on call 24 hours of the day and therefore died within the provisions of the compensation statutes. We do not believe this position can be maintained because there is no evidence, as stated earlier, that the deceased was doing anything but occupying his own trailer. There have been many cases pointing out the necessity that deceased or claimant, at the time of his injury or death, must have been in the scope of his employment and engaged in or about the furtherance of the affairs or business of his employer. In the case of Wallace v. Texas Indemnity Ins. Co., 94 S.W.2d 1201 (Tex.Civ.App., wr. ref.), wherein an individual living in the bunkhouse, and apparently while washing some clothes, was burned to death when the bunkhouse caught on fire, this court stated: "If Wallace, at the time he received the burns which caused his death, was not engaged in the work of his employer, then his widow and daughter could have no cause of action against appellee." There have been many other cases since, including Liberty Mutual Insurance Co. v. Preston, 399 S.W.2d 367 (Tex.Civ.App., ref., n. r. e.) holding that the claimant must establish that the injury was of a kind and character that had to do with and originated in the employer's work, business, trade or profession. In Loyd v. Texas Employers Insurance Association, 280 S.W.2d 955 (Tex.Civ.App., wr. ref.) suit was brought to recover for injuries sustained by an embalmer who, under his employment, was subject to call at all times and who, while standing on a ladder at home, sustained an injury when the ladder slipped as he was attempting to go and answer his telephone. In sustaining summary judgment for the defendant, the court said:

"It is a cardinal rule pronounced many times in this state that to sustain a judgment for a claimant the evidence must show that his injury occurred during the course of his employment or is so intimately related to his employment as to be a part of it. In our opinion, the evidence wholly fails to show that on the occasion of appellant's injury he was doing anything in furtherance of his employer's business. The evidence positively shows that he was painting his house at the time of the injury and while on vacation. It is true that he was injured while getting down from the ladder to answer the telephone, but there is no evidence in the record that he ever answered it or that any one answered it for him, nor is there any evidence that the call was from his employer. The call could have been from some friend or a member of his family, or even a 'wrong number.'"

We think this case is very similar to the one before us as there is no evidence whatever in our case to sustain the appellant's position except that the deceased was in his own trailer-house which had a telephone, and he was subject to call 24 hours of the day. There is no evidence that the injury was accidental. There is nothing to connect the fire with the duties and obligations of the deceased. As to his being on call, Mr. Crowell, the safety engineer for the employer, FWA Drilling Company, stated that the company's tool pushers (of which the deceased was one) were subject to 24-hour call, but when they were not on duty they were free to carry on their own business and could do whatever they wanted to do.

Appellant cites us to Texas Employers Ins. Ass'n v. Monroe, 216 S.W.2d 659 (Tex.Civ.App., n. r. e.) which was a tool pusher case. The court in that case stated that Monroe was a tool pusher who was on continuous *duty* 24 hours a day and subject to call at all times. The court further pointed out that his duties, which included keeping the well operation in sup-

plies, required him to make frequent trips between Houston and Saratoga. The court pointed out that when he was found dead in the Houston canal, this was on the normal route between Saratoga and Houston and that he had not deviated from the normal route. The court in that case also pointed out that the cases bearing on this problem are not all alike, but the law contemplates that the employee's *duty* be continuous. It must be recalled that, in the case before us, the official of the deceased's employer stated that deceased was on call, but when not on duty was free to carry on his own business and could do whatever he wanted to.

■ We must and do hold that here the plaintiff-appellant failed to produce any proof or evidence that the deceased met his death in a manner originating in the work, business, trade or profession of the employer which was received while engaged in or about the furtherance of the affairs or business of his employer. All that could be proved, or was proved, was that the deceased was in his own home when it burned; that he was subject to call 24 hours of the day, and that no one knows how the fire started or its origin. This brings up the fact that the proof is lacking that the fire was accidental and the death resulting therefrom accordingly accidental.

For the court to have submitted this case to the jury on the amount of proof presented would have been to invite the jury to indulge in pure speculation without proof. There was no way to raise a fact issue upon which a jury could determine that Mr. Thomas, the deceased, sustained accidental injuries resulting in his death, or that at the time of receiving such injuries he was in the course of his employment, and that the injuries so received were of a kind and character having to do with and originating in the work, business, trade or profession of his employer and that the injuries and/or death occurred while he was engaged in or about the furtherance of the affairs or business of his

employer. Appellee points out that when deceased was in his trailer, he was not subjected to any greater risk than any other employee who had worked on that same day and then proceeded home after the completion of his tasks; and appellee also points out with emphasis that the record is totally devoid of any evidence indicating that on the night of the fire Mr. Thomas had performed, or was in the process of performing, any work whatsoever in the furtherance of the affairs or business of FWA Drilling Company.

Therefore, we must hold that plaintiff-appellant was unable to discharge the burden required of claimants under the workmen's compensation laws and, as a result, presented no jury question and left the court with no alternative but to grant an instructed verdict.

Appellant's points, therefore, are overruled and the decision of the trial court is affirmed.

## DISSENTING OPINION

### PRESLAR, Associate Justice.

I respectfully dissent. I do not disagree with the proposition of law which the majority applies to this case; that is, that an injury, to be compensable, must have been received by the employee while engaged in or about the furtherance of the affairs or business of his employer, for the controlling law is the statute itself. Nor is my dissent based on any failure to give the Texas Workmen's Compensation law a liberal construction, for cases should be decided on specifics and not generalities. But I am convinced that a jury question is presented by the record in this case and that the court erred in taking the case away from the jury.

In determining whether the court erred in withdrawing this case from the jury and entering judgment for the appellee, this court must look to the testimony most favorable to appellant's contention and reject all that tends to disprove it. Hamilton v.

Liles, 404 S.W.2d 342, Tex.Civ.App., ref., n. r. e.

This is not the ordinary case of one injured outside the regular hours of his employment, away from the employer's premises, or while going to and from work, or while on call to come to the place of work. This man, in his capacity as a tool pusher, had a work situation peculiar to the drilling of an oil well, which distinguishes it from the decided cases relied on by the majority (excepting the Monroe case, which reached a result contrary to that of the majority).

By the chain of command on a drilling rig, as stringent and rigid as the military, the tool pusher is in charge of the drilling operation of that well around the clock. Under him are three crews, each headed by a driller, and each of which works an eight-hour shift doing the manual labor. The evidence is that such was the case on this well, and that the tool pusher was under the drilling superintendent who was in charge of all rigs. This tool pusher was as much in charge, and on duty, as to one crew as the other, regardless of the hour of the day. The safety engineer for the employer testified that the tool pusher was in charge; he was the boss of that rig, and the drillers and their crews worked under him; that he was in charge 24 hours a day, free to some extent to take off a few hours, but should let the drillers know where he could be reached. As to the statement attributed to this witness by the majority, he was asked:

"Q I gather you mean that a tool pusher should keep in touch with his rig, is that correct?

A Yes, but at the same time a tool pusher, he is free to carry own his own business * * *."

This witness also testified that the tool pusher could go to the filling station, Sunday school, dancing, barber shop, movies, stop off for coffee (or a drink if not in the company car), but should let somebody know where he could be reached at all times, and that being "out-of-pocket" too many times would get him in trouble with his employer. As noted by the majority, the employer furnished the tool pusher with a car, and the employer supplied a two-way radio, which was mobile to the extent that it could be used both in the car and in the trailer house where he lived (and died). By means of the two-way radio the deceased could call the drillers and crews at the rig and they could call him. The same was true as to the Midland office of the employer, FWA. The safety engineer, speaking of tool pushers and this two-way radio, testified: "Sometimes they have a separate unit that can be put in the home, they don't ever take it to have coffee. If they are going to spend the night at home, they have a plug in deal, I don't know exactly how to explain it, but there is a separate unit that can be put in the house and connected to the automobile and they can receive calls." The widow and daughters of the deceased employee testified that he had such a unit, which at times he removed from the car and took into the house, and that the employer paid for the telephone in their trailer house except for their personal long-distance calls. They also testified that the two-way radio was a constant companion of the deceased; that "he kept that radio with him at all times". It was not in his car when the fire occurred and, under the evidence, I think a jury could infer that it was in the trailer house. The widow and daughters also testified that the deceased worked at home for his employer, used the telephone a lot ordering supplies and oil and things for the rig; that he received calls at all times of the day and night and received calls "when something happened at the rig". A daughter testified that he was "never at home, and when he was they were always calling him"; that he was always calling or being called, drillers or roughnecks or somebody with FWA. Another daughter testified that most of the time he stayed at a trailer house at the rig, and when he came home he was usually called

back; that this happened frequently; that there were never long periods without calls to go back to the rig, order some parts or take care of company business. She was asked, "Was there any such thing as any time off when he was actually, even though he was there at the house, that he was off duty?" and she answered, "No, sir."

On the trial of this cause all matters were stipulated except scope of employment and lump sum payment, and the appellee-defendant's motion to withdraw the case from the jury was based on insufficient evidence to present a question that the deceased received the injuries which caused his death while in the scope of his employment. I think the evidence, coupled with matters of common knowledge, present such a question. As indicated by the majority, there is no direct evidence that the deceased was at the time of his death, or immediately prior thereto, performing any work in the furtherance of the affairs or business of FWA Drilling Co. It is readily apparent that the deceased was in a different category from the "on call" case of an embalmer, and others similarly situated, who are on call to come to the place of employment, *there* to perform services for the employer. This man did not have to be any particular place to perform his services; his place of performing was beside the two-way radio and the telephone. His lips are sealed as to what he was doing, but he was beside the telephone and it can be inferred that he was beside the radio. It is a matter of common knowledge that in the drilling of an oil well there is an ever-changing work situation. As the drill bit penetrates the various formations, different tactics, different supplies,

in different quantities, are called for. Those doing the manual tasks called on the tool pusher in this case for supplies and instructions to meet this ever-changing situation. The crews were each at the well only eight hours of the twenty-four, but one man—the tool pusher—was employed to keep abreast of all that went on twenty-four hours of the day to coordinate the work, solve the problems and see that machinery, services and supplies were available as needed. The employer made the tool pusher always available, everywhere, whenever his rig was running, and received the benefits twenty-four hours per day. The deceased was at home, but a man does not step out of the scope of his employment when he pauses to take a drink of water or do other things contemplated to be necessary for a human being when he is employed. As said in Southern Surety Co. v. Shook, Tex.Civ.App., 44 S. W.2d 425: "When a man is employed to work at any job, the fact that he is a human, with ordinary human habits and requirements, is necessarily taken into consideration." (Cited in Associated Indemnity Corp. v. Bush, 5 Cir., 201 F.2d 843, a case in point here.) Of necessity, one on twenty-four hour duty might retire to his home. That would be expected by the employer and was known to the employer who, in fact, made provision to continue receiving his services during periods of rest by furnishing the portable two-way radio and the telephone.

Viewed in the light which it must be on appeal, the evidence presents a question for jury determination, and I would reverse and remand the case for submission to the jury.