Walter H. DUNCAN et ux., Petitioners,

v.

Ewell D. SMITH, Jr., et al., Respondents.

No. A–10090.

Supreme Court of Texas.

July 7, 1965.

Rehearing Denied Oct. 6, 1965.

Strasburger, Price, Kelton, Miller & Martin and Fred K. Newberry, Dallas, for petitioners.

Ralph M. Hall, Rockwall, J. Alex Blakeley and Rae Ann Fichtner, Dallas, for respondents Smith, Jr., et al.

Thompson, Coe, Cousins & Irons, Dallas, for respondent-intervenors Urban Butane Service, Inc. and Pan American Ins. Co.

SMITH, Justice.

Respondents' motion for rehearing is overruled. However, the opinion delivered on April 28, 1965, is withdrawn and the following is substituted therefor.

Two suits for damages resulting from the death of John Milton Smith and injuries sustained by Ewell D. Smith were filed in the District Court of Kaufman County, Texas. By agreement the suits were consolidated. The consolidated suit went to trial to the court and a jury. Ewell D. Smith, Mrs. Margaret Griggs Smith, Gloria Jeanette Smith, Shirley Kay Smith and Beverly Johnette Smith, as Plaintiffs, sought to recover damages against Riley King, individually, d/b/a B. B. King, B. B. King, Inc., Buffalo Booking Agency, Millard Harvey Lee, Irene L. Duncan and husband, Walter H. Duncan. It was stipulated that B. B. King, Inc., was the owner of the King bus, and that Millard Lee, the driver, was the agent of B. B. King, Inc. The parties will be referred to hereafter by their trial court designation in the interest of simplicity.

The plaintiff, Ewell D. Smith, sought to recover damages against the defendants for injuries alleged to have been sustained by him in an automobile accident involving three vehicles which occurred on October 14, 1957, when he was riding as a passenger in a butane gas truck being driven by his brother, John M. Smith, who died as the result of injuries sustained in the accident. The defendant, Irene L. Duncan, was the driver of a Chevrolet automobile on the occasion of the accident. Another defendant, Millard Lee, was driving the third vehicle, a bus owned by the Defendant, B. B. King, Inc.

The plaintiffs, Mrs. Margaret Griggs Smith, widow of John M. Smith, and Gloria Jeanette Smith, Shirley Kay Smith and Beverly Johnette Smith, minor children of John M. and Margaret Griggs Smith, sought damages for the wrongful death of and conscious pain and suffering of the deceased, John M. Smith.

The plaintiffs alleged several grounds of negligence on the part of the defendants, Mrs. Duncan and Millard Lee, the driver of defendant King's bus. It was alleged that Mrs. Duncan, while driving the Chevrolet automobile, attempted to pass the King bus on the "left hand side thereof, * * * just as said Chevrolet automobile and said bus approached Bridge No. S14T50," situated on Highway 80 about nine miles west of the City of Kaufman; "that said bus hit the railing of said bridge and collided with said Chevrolet automobile; that said bus crossed the middle line of said highway and collided head on with the butane gas truck (being driven by John Milton Smith), * * *, said vehicles colliding with such force as to cause said butane gas truck * * * to burst into flames," and that John Milton Smith burned to death in the truck as the result of the collision.

It was further alleged that the collision was the result of the "concurrent negligence" of Millard Lee, the agent of the defendant, King Bus, and the defendant, Irene L. Duncan. It was alleged that "each and all of said acts taken singly and collectively and in concert with the acts of negligence of the co-defendants, directly and proximately resulted in said collision and the death" of John Milton Smith, and the serious injuries sustained by Ewell D. Smith. The defendants, King and Millard Lee, filed a general denial and demanded strict proof. The defendants, Walter H. and Irene L. Duncan, filed a plea of privilege, which was later waived, a general denial and a special denial of the acts of negligence alleged in paragraph 5 of plaintiffs' petition.

The Duncans affirmatively pleaded that the sole proximate cause of the collision and resulting injuries and damages sustained by the plaintiffs was the negligence of Millard Lee in the following particulars:

"(1) He attempted to pass the automobile driven by Irene L. Duncan on its right side, in violation of the laws of the State of Texas.

"(2) He drove the bus in question on the right hand shoulder on the highway in question, off of the paved portion of the highway, in violation of the laws of the State of Texas.

"(3) He failed to keep a proper lookout.

"(4) He drove the bus in question at a rate of speed that was excessive under the circumstances then existing.

"(5) He failed to timely apply the brakes of the bus he was operating.

"(6) He failed to sound his horn when such was necessary in order to insure safe operation of his vehicle, in violation of the laws of the State of Texas.

* * * * * *

"(8) He failed to maintain the bus he was driving under proper control."

The jury, in answer to special issues, found that: (1) the defendant, Mrs. Duncan was *negligently attempting to pass the* King bus, and that such negligence was a proximate cause, but not the sole proximate cause, of the collision; that (2) Mrs. Duncan failed to keep a proper lookout, and that such failure was a proximate cause, but not the sole cause, of the collision; that (3) the failure of Mrs. Duncan to apply the brakes on her automobile was negligence and a proximate cause of the collision; that (4) immediately prior to the collision, Mrs. Duncan was driving her car at a greater rate of speed than a reasonable and prudent person would have driven under the same or similar circumstances, and that such act was a proximate cause, but not the sole proximate cause, of the collision and resulting injuries; that (5) Mrs. Duncan drove her automobile to the left of the center line of the highway when approaching within 100 feet of the bridge upon which the collision in question occurred,

and that such act was negligence and proximate cause, but not the sole cause, of the collision.

The jury found that Millard Lee was (1) *not attempting to pass* the "vehicle being driven by Mrs. * * * Duncan on the right hand side of the said vehicle"; that (2) he failed to keep a proper lookout; that (3) he negligently failed to apply the brakes of the bus which he was driving; that (4) he negligently drove his bus at a greater rate of speed than a reasonable and prudent person would have driven; and that each of these acts constituted negligence and was a proximate cause of the collision; and that (5) Millard Lee negligently drove the bus "on his right hand shoulder of the roadway, and that such act of negligence was a proximate cause of the collision."

The jury found that the collision in question was not an unavoidable accident. The jury in answer to the damage issues, found damages for the plaintiffs in the aggregate sum of $368,000.00. The trial court entered judgment in favor of the plaintiffs against the defendants B. B. King, Inc., and the Duncans for the sum awarded by the jury, and entered a take-nothing judgment as to all other defendants.

The judgment of the trial court further provided for contribution in the event either of the defendants, B. B. King, Inc., and Walter H. Duncan, paid more than fifty per cent of the judgment.

· The defendant, B. B. King, Inc., did not appeal. The defendants, Walter H. and Irene L. Duncan, filed a motion for new trial which was overruled. These defendants excepted to the action of the trial court in overruling their motion for a new trial and duly perfected their appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas at Dallas, Texas. This Court upon equalization of the dockets of the several courts of civil appeals, transferred the cause to the Court of Civil Appeals for the Eleventh Supreme Judicial District of Texas, at Eastland, Texas. That Court held that the judgment

of the trial court awarding to the plaintiffs a total recovery against the defendants of $368,000.00 was excessive in the sum of $158,000.00, but in all other respects the judgment of the trial court was affirmed, with one justice dissenting. 376 S.W.2d 877.

The questions presented to this Court for decision are: (1) Did the trial court err in refusing to hold that there was no evidence upon which the jury could base its findings that Mrs. Duncan was negligent and that such negligence was a proximate cause of the accident? (2) Did the trial court abuse its discretion in refusing to allow a Highway Patrol investigation officer to testify that Millard Lee, after and while still at the scene of the accident, made a statement to the effect that "he [Lee] was trying to pass the Duncan automobile on the right. * * *"? (3) Was it error for the trial court to allow plaintiff's doctor to testify that "the plaintiff Ewell D. Smith, Jr., is more susceptible to cancer since the accident," even though the Court withdrew the testimony from consideration and instructed the jury not to consider the evidence for any purpose?

 The most vital and sharply drawn issue in this case was whether Mrs. Duncan's automobile was passing the King bus being driven by Millard Lee or was Millard Lee attempting to drive the King bus past the Duncan automobile at the time of the accident. As to the issue of whether Mrs. Duncan was attempting to pass the bus being driven by Millard Lee, we hold that the admitted evidence supports the findings of the jury that Mrs. Duncan negligently attempted to pass the bus and that such negligence was a proximate cause of the accident. However, we have concluded that the action of the trial court in refusing to admit into evidence the testimony of the Highway Patrol investigation officer that Millard Lee made a statement to the effect that he was trying to pass the Duncan automobile at the time of the accident was harmful error which requires that the judg-

ments of both the trial court and the Court of Civil Appeals be reversed. The questions of the admissibility of the officer's testimony and whether or not the exclusion thereof by the trial court was harmful will be discussed later.

We overrule the defendants' contention that the trial court erred in refusing to hold that there was no evidence upon which the jury could base its findings that Mrs. Duncan was negligent and that such negligence was a proximate cause of the accident. We shall relate the facts bearing upon the sharply drawn issue as to whether or not Mrs. Duncan was attempting to pass the King bus at the time of the accident. The facts supporting the jury findings on this issue are these:

"The accident occurred on a two-lane bridge. The bridge was about 80 feet long. The bridge was wide enough to accommodate two lanes of traffic, one eastbound and one westbound. The King bus and the Duncan automobile were traveling in a westerly direction. The Smith butane truck was traveling in an easterly direction. Extending from the east end of the bridge were permanent guard rails, each guard rail being 57 feet in length and extending along the north and south sides of the roadway, the width between them gradually increasing from the bridge to the east end of the rails. The overall width of the roadway, immediately east of the guard rail, including the paved shoulders was 38.6 feet. The bridge was only 27 feet wide. The evidence shows that as the King bus and the Duncan automobile traveled along the roadway east of the bridge and as they neared it and drove onto it, the King bus was traveling partially in the westbound traffic lane and partially on the paved shoulder. There is some evidence showing that Mrs. Duncan was, at that time, traveling to her left of the center of the roadway and to the left alongside the King bus. Ewell Smith testified that as one gets to the edge of that bridge 'going from any direction the shoulder plays out.' He further testified that

'* * * anybody driving on the shoulder has to get up in the lane of traffic to go over that bridge.'" Ewell Smith further testified that *Mrs. Duncan was passing the King bus when he first noticed the two vehicles.* Smith answered the following questions:

"Q. Was the bus ahead of or behind the car you are talking about?

"A. *The bus was on the side and she was passing when I noticed.*

"Q. You mean the bus was on the outside of the highway; is that right, and the automobile was on the inside?

"A. *Well, she was passing the bus when I first noticed them."*

Smith testified that when he first noticed—the bus was ahead—the car was "almost at the back end of the bus and they were just approaching on up—up to the bridge * * * well that would have put the bus on the shoulder up to the bridge there. * * * *Then she started overtaking the bus. * * Yes sir she was coming on around the bus. * * * No, she came around the bus * *."* The evidence shows that the bus struck the guard rail to the right of the roadway where it joined onto the bridge and then "bounced" off into the right road of the Duncan automobile. The bus then veered across the highway and struck the butane truck "head on" as the butane truck was driven onto the west end of the bridge.

The Duncan defendants presented Highway Patrol officer Barton as a witness to prove that Millard Lee, while still at the scene of the accident and at some time after the occurrence thereof, in response to questioning, made the following statement as to how the accident occurred:

"He advised me that he was passing an automobile and that he was passing the automobile on the right, which he called the improved shoulder. He said that when he saw that he was coming upon a bridge he applied his brakes and he didn't have enough air pressure

built up and he couldn't stop. He said he hit the bridge and then hit the car."

The car referred to was the Duncan car.

 The defendants contend that this testimony was admissible as a part of the res gestae and also admissible as a declaration against interest and that the exclusion of the statement attributed to Millard Lee was reasonably calculated to and probably did cause the rendition of an improper judgment. We have concluded that the statement attributed to Millard Lee is admissible as a declaration against interest. Therefore, we do not pass upon the contention that the statement was admissible as a part of the res gestae. Millard Lee died before the trial. In a proper case, declarations against interest of a person since deceased may be admitted, as in action for wrongful death, whether or not such declarations are a part of the res gestae and whether or not privity exists between the declarant and a party to the suit. On the other hand, the declarations of a person since deceased which are not against his interest are inadmissible. 31A C.J.S. Evidence § 218. Admitting declarations against interest as an exception to the hearsay rule has long been considered a proper action where the declaration of fact meets the recognized test as to what is a declaration against interest. "In its most essential elements the exception may be broadly stated as follows: Declarations of a person since deceased, opposed to his pecuniary or proprietary interest, are admissible in evidence, provided he was in a position to know of the matters stated and had no probable motive to misrepresent the facts." 2 McCormick and Ray, § 1001. There are several factors governing admissibility to be considered in determining whether the statement asserting a fact is a self-serving statement or a disserving statement, or both. 31A C.J.S., supra, at p. 606, footnote 11, summarizes these factors as:

"(1) Declarations made by a deceased person as to facts presumably within his knowledge, if relevant to the matter of inquiry, are admissible in testimony as between third parties: First, when it appears that declarant is dead; second, that the declaration was against his pecuniary interest; third, that it was a fact with respect to a matter of which he was personally cognizant; fourth, that declarant had no possible motive to falsify the fact . declared."

The admissibility of a declaration against interest is tested as of the time it is made. McCormick and Ray, Sec. 1007, in speaking of the declarant's motive to misrepresent the facts, says:

"It is sometimes stated as an additional requirement of this exception that the declarant must have had no motive to misrepresent. But this is not the accepted way of actually disposing of the situation where along with the disserving interest there is a self-serving interest. The real problem involved is: Should the two opposing interests be weighed and the statement received only if it is found that the disserving interest had the greater probable influence? Or should the disserving interest be regarded as sufficient of itself to admit the statement, leaving the self-serving interest to affect only the weight? Most courts have taken the former alternative, but one of the greatest of English judges, Sir George Jessel, was of the opinion that the latter was the correct one, i. e. the self-serving interest should affect only the credit of the statement. * * * It is obvious, however, that the view of Sir George Jessel would justify the receipt of the most self-serving declarations. The Texas Courts have paid no heed to the Jessel view. They do not admit really self-serving statements merely because they seem on their face disserving."

Wigmore, Evidence (3rd Ed.), Sec. 1462, et. seq., says " * * * that it is not merely the statement that must be against interest,

but the fact stated. It is because the fact is against interest that the open and deliberate mention of it is likely to be true."

It is our view that the statement in its entirety is disserving in nature rather than self-serving. The statement having been made under circumstances furnishing a guaranty of trustworthiness, it seems clear that it was admissible. The plaintiffs contend, however, if the action of the trial court in excluding the proferred testimony was error, it was unquestionably harmless error within the contemplation of Rule 434, Texas Rules of Civil Procedure. We agree that the cause should not be reversed unless it can be held that the exclusion of the testimony was calculated to and probably did cause the rendition of an improper judgment in this case. In order to warrant a reversal, the error complained of must have been prejudicial to the substantial rights of the Duncan defendants. 3 Am.Jur. 555 (1936). The trend of the courts is to follow " * * * a policy of refusing to set aside or reverse judgments for errors of law committed during the trial unless in the sound judgment of the court the errors contributed in a substantial way to bring about an unjust result." See "The Development of the Doctrine of Harmless Error in Texas," 31 Tex.L.Rev. 1, 17–18 (1952). The question of whether or not the excluded testimony would have in all reasonable probability resulted in a jury verdict exonerating Mrs. Duncan from any charges of negligence proximately causing the accident is to be determined as a matter of our judgment in the light of the record as a whole. Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210, 216 (1958). The Baladez case, in principle, announces the rule to be followed, although that case involved an erroneous action of the trial court in admitting testimony rather than an erroneous action in excluding admissible testimony. In that case it was said:

"Pittman, in order to discharge his burden of establishing the inadmissible evidence was prejudicial, was not required to prove or demonstrate that but for the erroneous action of the trial court in admitting the testimony, a different judgment would necessarily have resulted. See Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191, 192; Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115. It was only necessary that he establish that the evidence was reasonably calculated to and probably did cause the rendition of an improper judgment. See American General Ins. Co. v. Jones, 152 Tex. 99, 255 S.W.2d 502; Missouri-Kansas-Texas Railroad Co. v. McFerrin, Tex., 291 S.W.2d 931, 944; Rules 434 and 503, Texas Rules of Civil Procedure."

In the light of the record as a whole, we conclude that the Court's action in excluding the proferred testimony was reasonably calculated to and probably did cause the rendition of an improper judgment. If the jury had been allowed to consider the excluded testimony, it is reasonably probable that the jury would have found that Mrs. Duncan was not attempting to pass the King bus at the time of the accident, and that Millard Lee was attempting to pass the automobile being driven by Mrs. Duncan.

It is argued that the excluded testimony was not direct factual evidence on the other issues of negligence and proximate cause found against Mrs. Duncan by the jury; and, therefore, the plaintiffs were entitled to a judgment based upon the findings of the jury that Mrs. Duncan was not keeping a proper lookout; that she failed to apply her brakes; that she was "driving her car at a greater rate of speed than a reasonable and prudent person would have driven under the same or similar circumstances" and, that she "drove her vehicle to her left of the center of the roadway when approaching within 100 feet of the bridge upon the occasion in question," coupled with the jury findings that each such act of negligence was a proximate cause of the acci-

dent. We do not agree. We are not unmindful, however, of the holding of this Court in the case of Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806 (1958), wherein it was stated "categorically that the testimony * * * was not direct factual evidence on the issue of whether the plaintiff kept a proper lookout as he approached the detour." In the course of the opinion in the Cloud v. Zellers case we discussed at some length the case of Mrs. Baird's Bread Co. v. Hearn, 157 Tex. 159, 300 S.W.2d 646 (1957), wherein we held that "the excluded testimony was altogether collateral to the real issues in the case." The rule applied in those cases governs our decision here, but the result is different. In the Hearn case, we said that the excluded testimony was altogether collateral to the real issues. In our judgment, the excluded testimony cannot be said to be collateral to the issues of negligence and proximate cause found by the jury against Mrs. Duncan. The issues were sharply drawn and were so interwoven as to convince us that the error of the trial court in excluding the testimony was calculated to cause and probably did cause the jury to give the answers it did give to all issues in support of the judgment against the Duncans.

The remaining points in this Court present the contention that the trial court erred in permitting Dr. L. W. Conradt to testify that the plaintiff Ewell Smith is more susceptible to cancer since the accident. The trial court first admitted the testimony over the objection that the answers of the doctor clearly showed he was basing his testimony on speculation and possibilities as to what might happen in the future and not upon reasonable probabilities. Later in the trial and in response to plaintiffs' motion, the trial court instructed the jury as follows:

"THE COURT: Ladies and gentlemen of the jury, earlier, during the trial, there was offered in evidence that Ewell Smith may be more susceptible to cancer because of his burns. This evidence is being withdrawn from your consideration, and you are instructed not to consider it for any purpose, and I admonish you to follow these instructions as it is not now evidence in this case."

The Duncans argue that the very mention of the word "cancer" is frightening, and that the instruction given by the court could not possibly cure the error in admitting such prejudicial testimony. In view of the court's instruction, we decline to hold that the defendants have shown reversible error by this point. Regardless of the fact that the trial court did not withdraw the testimony from the jury's consideration until after the plaintiffs moved the court to do so, nevertheless, the trial court ultimately sustained the defendants' objection and instructed the jury not to consider the evidence for any purpose. The evidence as to "cancer" could only have a bearing on the question of damages sustained by Ewell Smith. It must be presumed on appeal that the jury excluded evidence, as instructed, and based its award of damages to Ewell Smith on evidence properly before it, unless the contrary appears. If upon a retrial of this case, the testimony is offered in the same manner as the record shows it was offered during the present trial, the objection thereto should be sustained. The answers of the doctor clearly show that he was basing his testimony on speculation and possibilities rather than upon reasonable probabilities.

For the reasons stated, the judgments of the trial court and the Court of Civil Appeals are both reversed and the cause is remanded to the trial court for a new trial.

Any party desiring to do so may, within fifteen days from the date of delivering this opinion, file a motion for rehearing.