**Joel REESE, Jr., Appellant,**

v.

**SECURITY NATIONAL INSURANCE COMPANY, Appellee.**

No. 14792.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 24, 1969.

Rehearing Denied Oct. 22, 1969.

James L. Branton, Carter, Callender & Branton, San Antonio, for appellant.

Brown, Erwin, Maroney & Barber, Austin, for appellee.

KLINGEMAN, Justice.

This appeal arises out of a workmen's compensation suit tried to a jury, resulting in a verdict that plaintiff, Joel Reese, Jr., take nothing against Security National Insurance Company. The jury found that plaintiff had sustained an accidental injury on September 11, 1967, in the course of his employment; that such injury was not a producing cause of any incapacity to work; and that any incapacity which plaintiff had suffered since September 11, 1967, was due solely to some prior physical condition.

Plaintiff, by his first five points of error, complains that the trial court erred: (1) in overruling plaintiff's motion for mistrial based upon reference by defendant's attorney, in his opening statement to the jury, to alleged Black Muslim activities on the part of plaintiff; (2) in allowing testimony by a witness as to Black Muslim activities on the part of plaintiff; (3) in allowing testimony as to circumstances which caused plaintiff to lose another job; (4) in overruling plaintiff's motion for mistrial based upon a question asked by defendant's counsel as to whether a 1963 wrist injury incurred by plaintiff was the result of a gunshot wound; (5) in overruling plaintiff's motion for mistrial based upon the cumulative effect of errors committed by the trial court. These points will be discussed together.

It is plaintiff's contention that the statements and testimony complained of in his first five points of error were of such prejudicial and inflammatory nature as to make it impossible for him to get a fair and impartial trial.

Defendant asserts: (a) that all of such testimony and statements were relevant and admissible in support of its contention that plaintiff did not suffer an on-the-job injury on September 11, 1967, and that plaintiff's inability to obtain and hold a job was not due to any injury he sustained but was attributable to plaintiff's attitude and to his work history; (b) that evidence tending to show that plaintiff was an unsatisfactory employee was proper and relevant rebuttal to testimony by plaintiff's witnesses that he was a good worker; (c) that any error in admitting evidence as to Black Muslim activities was cured by the trial court's instruction during the trial and by the court's charge; (d) that any error complained of in such points of error is harmless error.

The issue as to whether plaintiff suffered an injury in the course of his employment on September 11, 1967, was a contested one. Plaintiff testified that on such date while working for Inwood Construction Company, he and a fellow employee were moving a bundle of about twelve steel rods weighing approximately 300 pounds; that after picking up his end he was holding it under his arm, and when his co-employee dropped the other end it pulled something in his back. After moving to another work area, he noticed that he could hardly bend, and he then notified his foreman, who had been standing close by at the time, of the claimed accident. Although requested by plaintiff to testify, the co-worker would not do so unless served with a subpoena, and did not testify. To controvert plaintiff's testimony, defendant called the foreman as a witness. Such foreman testified that at the time of the claimed accident he was standing nearby, observing the work, but did not see any type of accident occur, or anyone drop anything; that there were no bundles of steel

rods there at that time; that it would have been against union rules for plaintiff to move a bundle of steel rods because plaintiff was not an iron worker, and no one but an iron worker was allowed to move bundles of steel rods.

Plaintiff testified that he considered himself a good worker and two witnesses who had worked with him testified that he was a good worker. Defendant subsequently presented testimony by the labor foreman, who had worked with plaintiff on another job in addition to the Inwood job, that plaintiff was an unsatisfactory employee; that prior to his injury on September 11, 1967, on the Inwood job, plaintiff missed a great deal of time from work; that he was not doing his work as far as the job was concerned, and that he was fired because he wouldn't work. Mr. Rumsower, the maintenance and operation officer for the Tower of the Americas, testified that plaintiff worked under him at HemisFair after the accident here involved; that he was not a good laborer; that he spent much of his time talking with other workers, and this was holding up what was required to be done. A security guard at HemisFair testified that on one occasion while plaintiff was working at HemisFair, plaintiff walked into the kitchen at the Lone Star Pavilion, took a sandwich and was starting to eat it; that the guard asked plaintiff if anyone had given him permission to take a sandwich and plaintiff stated, "No one gives me permission to do anything," that after some discussion plaintiff called the guard about three names, hit him and pushed him backwards; and that plaintiff did not appear to have any physical impairment of any kind at that time.

## POINTS OF ERROR PERTAINING TO BLACK MUSLIM REFERENCES

Although a complete transcript of the attorneys' opening remarks to the jury is not contained in the record, it appears from plaintiff's bill of exception that defendant's counsel, in his opening statement to the jury, stated that at one time plaintiff was employed by HemisFair where he was not a satisfactory employee and, as a matter of fact, became engaged in activities not in furtherance of his employer's business; that his supervisor made an investigation and satisfied himself that plaintiff was engaged in Black Muslim activities, and he was thereafter transfered to another department, where, within a couple of weeks, he challenged a security officer after an argument and was discharged immediately thereafter. During the trial, Mr. Rumsower, the maintenance and operations officer for the Tower of the Americas, after testifying that plaintiff was not a good worker, when asked whether as a result of his work activities, or lack of work activities, he saw fit to make an investigation of what plaintiff was doing or not doing on the job stated: "Well, I began to see him talking with other people quite often and it was, in my opinion, holding up what we were required to do. So I attempted to find out what was happening, and I satisfied myself that he was talking to other people regarding the Black Muslim organization." Later in the trial, the court unequivocally instructed the jury not to consider anything about Black Muslim, and in the court's charge the jury was instructed "Not to consider any statement, question or answer by counsel or witnesses regarding Black Muslim activities."

■ Argument of counsel which is improper only because it is calculated to arouse prejudice is usually regarded as the "curable" type. Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298 (1956); Wade v. Texas Employers' Insurance Association, 150 Tex. 557, 244 S.W.2d 197 (1951). The presumption on appeal is that the jury excluded evidence as instructed and based its verdict on evidence properly before it. Duncan v. Smith, 393 S.W.2d 798 (Tex.Sup.1965); Walker v. Texas Employers' Insurance Association, supra.

■ We cannot say from this record that the argument complained of was rea-

sonably calculated to cause, and probably did cause, the rendition of an improper judgment. Any error in same is therefore harmless. Texas Sand Company v. Shield, 381 S.W.2d 48, 58 (Tex.Sup.1964).

## POINTS OF ERROR PERTAINING TO ADMISSION OF TESTIMONY

Plaintiff also complains that the court erred in overruling his motion for mistrial based upon testimony brought out by defendant that plaintiff had received an injury to his wrist some four years before from a gunshot wound. In actuality, there is no testimony in the record that plaintiff received a gunshot wound. The matter of the wrist injury was first injected on cross-examination of plaintiff by defense counsel with regard to certain changes made in plaintiff's deposition where he had originally answered that he had never received any injury sufficient to see a doctor before September 11, 1967, but had subsequently changed such answer. Plaintiff testified, without objection, that he had received a wrist injury in 1963, and had been treated by a doctor for it. Defendant's counsel thereafter asked if there was a scuffle in connection with such injury, which plaintiff denied. Plaintiff's counsel on redirect examination again went into the matter of the wrist injury and asked whether it had something to do with a problem plaintiff and his wife had at one time, which plaintiff answered affirmatively. On recross, defendant's counsel again asked whether there was a scuffle involved in connection with the wrist injury, which was again denied by plaintiff. Defendant's counsel then asked: "As a matter of fact you were shot at the time, weren't you?" This question was not answered.

■ Defendant maintains that such question was relevant rebuttal to plaintiff's redirect testimony, and that plaintiff "opened the door" for defendant's question by inquiring whether the wrist injury pertained to a problem he had with his wife. We see no particular materiality of the testimony pertaining to the wrist injury in connection with the injury involved in this case, but, from an examination of the entire record, we do not regard the asking of the question, without answer thereto, as harmful error. Rule 434, Texas Rules of Civil Procedure.

## HARMLESS ERROR

It is settled that the question of whether an error probably caused the rendition of an improper judgment must be determined by the appellate court, in the exercise of its judgment, from an examination and consideration of the record as a whole. Appellate Procedure in Texas, Harmless Error, § 17.6; Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953). Before an error may be made the basis for reversing a trial court's judgment, the appellate court must be satisfied that the error complained of was reasonably calculated to cause, and probably did cause the rendition of an improper judgment in the cause. Rules 434 and 503, T.R.C.P.; Walker v. Texas Employers' Insurance Association, supra; Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367 (1954); Aultman v. Dallas Ry. & Terminal Co., supra; City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860 (1952); Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191 (1949); Crofford v. Bowden, 311 S.W.2d 954 (Tex.Civ.App.—Fort Worth 1958, writ ref'd).

Although plaintiff contends that the statements and testimony complained of under his first five points of error are of such a prejudicial nature as to so influence the minds of the jury that it was impossible for him to obtain a fair and impartial trial, it is to be noted that the jury answered the vigorously contested issue of whether plaintiff suffered an accidental injury in the course of his employment in plaintiff's favor, and also returned an answer favorable to plaintiff on another contested issue, as to whether plaintiff suffered a personal injury while working at HemisFair in September, 1968.

In view of defendant's contention and defense that plaintiff's difficulty in procuring and retaining employment is not due to any injury suffered on September 11, 1967, but is attributable to his attitude and general work history; the fact that before defendant presented any evidence relating to "good" or "unsatisfactory" worker, plaintiff introduced evidence that he was a good worker; the court's instruction to the jury with regard to any reference to Black Muslim activities; and the abundance of evidence in the record supporting the jury's verdict, we find no reversible error in the matters complained of under plaintiff's points of error Nos. 1, 2, 3, 4 and 5, and all are overruled.

■ Plaintiff's point of error No. 6 asserts that the jury's answer that the injury sustained by plaintiff on September 11, 1967, was not a producing cause of any incapacity to work, is contrary to the great weight and preponderance of the evidence. There is evidence, both pro and con, with regard to the producing cause issue. Plaintiff's testimony that the September 11, 1967, injury was a producing cause of his incapacity to work is supported by some medical testimony. However, there is evidence, both medical and other, to the contrary. Dr. Harle, the first doctor to examine and treat plaintiff after the injury, testified that he could find no objective signs of any injury at all, although plaintiff complained of pain; that the tests he took showed no abnormal conditions; that he felt plaintiff could go back and perform his usual work after he left his office following the first time he saw him; that in all he examined and treated plaintiff four different times, and that on September 18, 1967, he dismissed plaintiff as cured, capable of doing the same work as before his injury, having no permanent disability; that he knew of no reason why plaintiff should have any disability which would keep him from doing any kind of work. Plaintiff testified that he went to the Robert B. Green Hospital in connection with such claimed injury, and that a doctor there told him he didn't find anything wrong. Two radiologists, who testified with regard to the X rays, stated there was no indication of any fracture or dislocation. One of the radiologists testified that such X rays showed some slight abnormalities which might produce some disability, but these findings were disputed by the other radiologist. The jury's finding that plaintiff's injury of Sept. 11, 1967, was not a producing cause of any incapacity to work is not contrary to the great weight and preponderance of the evidence and is supported by sufficient evidence.

■ Plaintiff's last point of error is that there is no evidence to support the jury's answer that plaintiff's incapacity was due solely to prior physical conditions.[1] There was testimony by a work foreman where plaintiff worked, that during the two and one-half to three and one-half months period immediately preceding plaintiff's September 11, 1967, injury, plaintiff missed a great deal of work, that he was having some kind of trouble with his organs or something and that he missed work because of some illness. There was evidence that a doctor had treated plaintiff for prostate problems in October, 1967, shortly after the accident, at which time plaintiff made complaints of his back hurting him, and there is testimony by one doctor that any patient complaining to him of back pain gets a

1. "Question No. 20: Do you find from a preponderance of the evidence that the plaintiff's incapacity, if any, to work, which the plaintiff, Joel Reese, Jr., has suffered since September 11, 1967, or will suffer in the future, if any, is not due solely to some other injury, ailment, physical condition or disease existing prior to September 11, 1967, wholly disconnected with and not aggravated by the injury, if any, sustained by him on September 11, 1967?
   Answer by stating:
   'Such incapacity is not due solely to such prior physical conditions,' or
   'Such incapacity is due solely to such prior physical conditions.'
   We, the jury, answer: Such incapacity is due solely to such prior physical conditions."

prostate examination. Plaintiff testified that in 1965 he was dragged by an automobile for about a block, although plaintiff denied this caused any injury except to his knee and toe. Under the record, there is some evidence to support the jury's answer that any incapacity to work which plaintiff has suffered since September 11, 1967, is due solely to some prior physical condition.

The judgment of the trial court is affirmed.