Gary JONES et al., Appellants,

v.

Patricia Ann BERRY, Appellee.

No. 15631.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

June 25, 1970.

Rehearing Denied July 16, 1970.

R. E. McDaniel, Beaumont, for appellants.

Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for appellee, Bryan J. McGinnis, Beaumont, of counsel.

COLEMAN, Justice.

This is a suit for damages growing out of an intersectional collision. The trial court entered a judgment for the defendant based on a jury verdict.

Appellants assert that the trial court erred in refusing to admit the testimony of an eye witness, after the close of the defendant's case, on the ground that the testimony was part of the plaintiffs' case in chief and was not proper rebuttal testimony. Appellee contends that this ruling of the trial court was correct, but that if the court was in error, it was not shown to be so prejudicial as to require a reversal of the case. We conclude that the trial court erred in its ruling, but that, in light of the record as a whole, we cannot say that the excluded testimony would have in all reasonable probability resulted in a

jury verdict on which a judgment for the plaintiffs could have been rendered. Duncan v. Smith, 393 S.W.2d 798 (Tex.1965).

In response to special issues submitted, the jury did not find (1) that the defendant failed to keep a proper lookout; (2) that the defendant failed to yield the right of way to the plaintiffs; that the defendant failed to bring her vehicle to a stop before entering the intersection.

The jury found that Gary Jones, the minor plaintiff, operated the motorcycle at an unsafe speed which was a proximate cause of the accident in question; that he failed to keep a proper lookout which was a proximate cause of the accident; and that the collision was not the result of an unavoidable accident. The jury failed to find facts establishing that the defendant had the right of way at the time of the accident or that Gary Jones failed to yield same.

The accident occurred at the intersection of Highway 124 and La Bleu Road in Winnie, Texas. The plaintiff was proceeding south on the inside lane of the highway. An automobile driven by Mrs. Rooks was also proceeding south on the highway signaling for a righthand turn into the La Bleu Road. The defendant was going east on La Bleu Road, which has one lane for traffic proceeding east and one lane for traffic going west. There is a stop sign for traffic entering the intersection from the road. A Shell gasoline station is located on the northwest corner of the intersection.

Roger Breaux was called as a witness by the plaintiff. He was employed at the Shell station, as was the plaintiff. He testified that he saw the accident. He stated that the defendant slowed down, but did not stop, at the stop sign. He heard the motorcycle and saw it before it got in front of the station. He "just kind of followed him." He was certain that he "saw Pat Berry come to that stop sign and not stop." When he was confronted with a statement he had signed

some five months before the trial in which he stated that he saw defendant's car about one and a half car lengths west of the stop sign and that he did not remember whether it stopped for the stop sign or not, he stated that he was working at the time he made the statement and that he did not now remember what he said. He glanced over the statement before he signed it. At the time he was answering the questions, he didn't want to tell anyone about the accident. He didn't see her stop completely. Finally in answer to a question as to whether he was absolutely sure that the car didn't stop at the stop sign, he said: "Well, no sir. I can't say exactly." "Well, I mean, I wasn't watching inch for inch." The car entered the intersection when the motorcycle was about eighteen feet away from it. The motorcycle was moving up on the side of the car that was turning to the right.

Larry Haufpauer, who also worked at the Shell station, saw the collision. He saw the boy on the motorcycle apply his brakes and heard the motorcycle horn blow when the motorcycle was about one hundred feet from the point of impact. The boy was going about forty miles per hour. He saw the car before the actual impact. It was being driven east on the intersecting street. When he saw the car it was in motion, but it was not moving very fast.

The testimony of these witnesses would have been sufficient to support a finding that the defendant failed to stop at the stop sign.

Gary Jones, the plaintiff, testified that he was driving in the lefthand lane of the highway between forty and forty-five miles per hour. He knew it was a busy day at the Minimax store located near the intersection. As he looked up the road before he got to the intersection he had seen cars pass the intersection. As he was approaching the intersection, there was a car with its blinker lights on. "Then as I turned, there was just another one in front of me and that was it." Before he reached the intersection the car in the

righthand lane was ahead of him a little. He thought that it blocked the defendant's view of him. He didn't pass the car "completely". "It was just turning sort of long—just slowed down and turned and that was it." He might have been only one hundred feet from the intersection when he blew his horn and applied his brakes. He couldn't be sure because everything happened so fast. " * * * I just remember going along there and cars in front of me—sort of like a dream—then all of a sudden there was a car to my right, and all of a sudden a blue car there—and grabbed all the brakes and then, bam (snapping fingers)." The first time he saw the defendant's car it was "coming right out in front of me." He was looking straight down the road and he didn't turn his head to the right to look for traffic. He thinks that from two hundred feet back he could see 180 degrees when he was looking ahead. He knew there were cars on La Bleu Road because there always were, but he wasn't expecting one to come out in front of him. The defendant's car was a blue Chevrolet. When he first saw the car, it was "sort of coming around in front of me" and was going about two miles an hour. It was a clear day and visibility was good. The head of a person driving a motorcycle is as high as, or possibly a little higher than, that of a person driving an automobile. The motorcycle was a little less than half the length of a standard automobile. The seat and handlebars of the Honda motorcycle would be below the window level of such a car.

Patricia Ann Berry testified that she had been at a washateria near the Mini-max store on the corner, and that she entered La Bleu Road from the parking lot and turned to the right. She was behind another car and had to stop four times before she finally attempted to cross Highway 124. When she got to the stop sign, she stopped and looked both ways before proceeding. She saw Mrs. Rooks' car make a turn into La Bleu Road. She then looked both ways and did not see the motorcycle. The car did not block her vision. She was in the second lane of the highway when her car was hit. She does not know where the motorcycle came from. Her hearing is impaired. She never did see the motorcycle and she did not hear anything.

Mrs. Montin Rooks saw the accident. She was driving south on Highway 124 preparing to turn right on La Bleu Road. She knows Pat Berry and saw her stopped at the stop sign on La Bleu Road. At that time she was in front of the Shell station, about four car lengths from the intersection. She was not certain whether the car was behind or in front of the stop sign. As she was about to turn right, Pat Berry's car had entered Highway 124 and had cleared her lane of traffic. At about that same time she heard a motorcycle race its motor beside her car. Mrs. Rooks was not very far from the intersection when the Berry car started from its stopped position near the stop sign, and the accident happened before she completed her turn. She first became aware of the motorcycle when she was about forty or fifty feet from the intersection. The motorcycle was "not speeding for that area." When she first noticed it, the motorcycle was even with her. She glanced around when "he raced his motor and he was up by my car." It was about this time that Mrs. Berry's car started moving. Her car prevented the defendant from seeing the motorcycle. By the time the motorcycle passed her car, there wasn't time for its driver to do anything. The motorcycle was probably less than sixty feet from the intersection when the defendant entered it.

The testimony contained some inconsistencies and contradictions, but it was clearly sufficient to support the answers made by the jury to the issues submitted. There is nothing in the record to suggest that the verdict of the jury resulted from passion, bias, prejudice, or other improper influence.

After the defendant rested her case, however, the plaintiff called as a witness Dexter Vietor. He testified that on the date of the accident he was working at the Minimax store and that he carried groceries out to the cars in the parking lot. At this point, after a conference at the Bench, the jury was retired and the court warned counsel that if they got "into new material here which should have been put on in the main", he might declare a mistrial. In the absence of the jury counsel for plaintiff asked Mr. Vietor two questions. Vietor answered that he saw the accident in question and that Patricia Ann Berry did not stop for the stop sign. At this point there was an objection that this testimony was not proper rebuttal evidence. The court sustained the objection. Counsel for plaintiff then said: "Note my exception, Your Honor. We want to take our Bill of Exception." The court ruled that he could "go ahead and take it" and asked if he had any more questions for the witness. No more questions were asked. Appellant properly preserved his point by his exception since the record reflects the questions and the answers of the witness. Ex parte Taylor, 322 S.W.2d 309 (Tex.Civ.App.—El Paso 1959); Rule 372, Texas Rules of Civil Procedure.

The trial court erred in refusing to admit into evidence the testimony of Mr. Vietor. The testimony was proper rebuttal evidence. Gendke v. Travelers Insurance Co., 368 S.W.2d 3 (Tex.Civ.App.—Waco 1963).

The excluded testimony was direct factual evidence on the issue of the defendant's negligence. It was not direct factual evidence bearing on the issue of the failure of the plaintiff to keep a proper lookout. Considering all of the evidence it cannot be said that in all reasonable probability the jury would have found that the defendant failed to stop for the stop sign had the excluded testimony been admitted. The answer made was supported by the positive testimony of a disinterested witness who was in a position to know the facts. There is evidence that the motorcycle was hidden from the sight of defendant. While part of the plaintiff's body would, in all probability, have been visible through the windows of the car, the jury might well have concluded that the failure of the defendant to see the plaintiff under those conditions did not constitute negligence.

Considering all the evidence, the finding that the plaintiff failed to keep a proper lookout is properly supported. He could be expected to see the defendant's automobile. His testimony that he relied on the presence of the stop sign at the intersection and failed to check specifically for traffic was a damaging admission despite his testimony that by reason of his peripheral vision he could have seen objects within 180 degrees when he was looking straight down the highway. It is undisputed that he failed to see the car, which was traveling very slowly, until it was too late to avoid the collision. Under these circumstances whether or not defendant's car stopped at the stop sign would have at most an indirect and insubstantial bearing on the lookout issue.

It cannot be said that the exclusion of this evidence in all reasonable probability resulted in the jury verdict that the plaintiff failed to keep such a lookout as a person of ordinary prudence in the exercise of ordinary care would have kept under the same or similar circumstances, and that such failure was a proximate cause of the collision in question. The error of the trial court in excluding the proffered testimony does not warrant reversal of the case. Duncan v. Smith, supra; Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806 (1958).

This suit was brought by "Gary Jones, a Minor, by and through his father, natural guardian and next friend, Ben E. Jones," and by Ben E. Jones, individually.

The record affirmatively shows that there was no conflict of interest between the minor plaintiff and his father, the next friend. The attorney for the plaintiff represented to the court that there was no necessity for the appointment of a guardian ad litem and no conflict of interest, when the court inquired about the matter. The appointment of a guardian ad litem for a minor plaintiff is not required, under such circumstances, by Rule 173, T.R.C.P.

Affirmed.