Nolberto **MARTINEZ**, Appellant,

v.

Thomas D. **MEEK**, M.D., Appellee.

No. 6515.

Court of Civil Appeals of Texas, El Paso.

Aug. 25, 1976.

Rehearing Denied Sept. 15, 1976.

Dan Sullivan, Andrews, for appellant.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., W. O. Shafer, James M. O'Leary, Odessa, for appellee.

## OPINION

WARD, Justice.

This is a medical malpractice case where at the conclusion of the plaintiff's evidence the trial Court granted defendant's motion for an instructed verdict and entered judgment for the doctor. A small clip or piece of metal was left in the defendant's back in or near the spinal canal, either accidentally or intentionally, as a marker to show the location of a laminectomy. Legal sufficiency questions are raised as to negligence, fraudulent concealment and causation. We affirm.

On October 1, 1970, Nolberto Martinez injured his back while loading signs as a part of his highway department job. He was referred to Dr. Thomas D. Meek, a neurosurgeon practicing in Odessa, on October 19th, and he made a diagnosis of a ruptured disc. The next day, Dr. Meek performed a laminectomy and removed a portion of the disc between L–4 and L–5. Because the plaintiff had an extra transitional vertebra, Meek testified that he placed a small clip in the back as a marker to locate the site of the operation. This was described as a tiny surgical clip, about one millimeter wide and a few millimeters long, and constructed of an inactive metal. The doctor did not inform Martinez about the surgical clip either before or after the operation, and he did not mention the clip in his post-operative report filed at the hospital, but the X-ray report made after the operation notes the presence of the object.

According to Meek, the clip was placed above the area where the disc was removed and to the side. According to Dr. Palafox, who testified for the plaintiff, the metal was a piece of a surgical suturing needle and was located in the spinal cord or very close to it. The plaintiff continued to suffer intense pain in his back, and after learning of the piece of metal and its possible connection with his problems, he filed suit against the doctor alleging that Dr. Meek was negligent in leaving within his body a piece of a surgical needle or a surgical clip; that the doctor wilfully and fraudulently withheld from the plaintiff the fact that he had left in his body the foreign metal object, and he claims on appeal that the doctor was negligent in failing to inform him before the operation that the clip was going to be left in.

The one point on appeal is that there was sufficient evidence introduced upon which the plaintiff was entitled to have the case submitted to the jury. The evidence will be considered in the light most favorable to the plaintiff, conflicts will be disregarded, and every inference from the evidence will be indulged in favor of the plaintiff. *Hart v. Van Zandt*, 399 S.W.2d 791 (Tex.1965).

Appellee argues that there was no evidence as to negligence or fraudulent concealment concerning the leaving of the clip as this was not the ordinary "foreign body" case because the clip was intentionally left as a part of the surgical process and as a marker. Dr. Meek and Dr. Palafox both testified that the leaving of a marker was standard and accepted practice of marking a surgical site. Dr. Meek testified that he did not inform the plaintiff or report it as it was a very insignificant event, and he could not have informed him before the operation as he did not know at that time that he would mark the site of the operation. We are not prepared to accept this argument as dispositive of the question of negligence or of the unimportance of the concealment. The testimony remains unchallenged by any objection that the item appeared to Dr. Palafox to be a piece of a

surgical suturing needle; that it was in the spinal canal and not, as claimed by Dr. Meek, an inch or two away from the spinal canal. The fact also remains that the item was neither reported to the patient nor entered on the hospital records. This lapse was condemned by Dr. Palafox who stated that, if it was a marker, it was common practice among surgeons to report it in the operative procedure so later physicians would be aware of what they were looking at and why it was left there; that it was also advisable to tell the patient that the object was left in his body in order that the patient could advise any future physician that it was there and the reason why. One apparent inference from the above is that the treating physician inadvertently left the piece of needle in the patient's body, and therefore didn't report it or, if he found it in the post-operative X-ray, he then intentionally failed to call it to his patient's attention.

▇ The plaintiff is complaining of unbearable pain since his operation, and that he is disabled from that pain. It is obvious that medical testimony is needed to establish the causal connection between the piece of metal and the disabling pain. Therefore, the essential ingredient to this cause of action for malpractice is medical testimony showing that the metal or marker is the proximate cause of the pain and the plaintiff's condition. *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949). The causal connection is also essential to the cause of action based upon fraud or fraudulent concealment. *Allison v. Blewett*, 348 S.W.2d 182 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.); and *Thomas v. Beckering*, 391 S.W.2d 771 (Tex.Civ.App.—Tyler 1965, writ ref'd n. r. e.). The evidence must show at least a reasonable probability that the plaintiff's complaints were caused by the defendant's act. *Lenger v. Physician's General Hospital, Inc.*, 455 S.W.2d 703 (Tex. 1970). "The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this court and by other courts."

After reviewing all of the evidence in the light most favorable to the Appellant, we are unable to find anything in the testimony that the metal either caused or contributed to cause the pain complained of. All we have is a mere possibility. Dr. Palafox, upon whose testimony plaintiff relies, stated that the plaintiff's condition and disability could be caused by the piece of metal, by the original disc, by a myelogram, or by the surgery. He said it would be pure speculation to say that the piece of metal was producing nerve root compression and the plaintiff's back complaints. Because the essential element of a causal connection is lacking, any recovery is foreclosed. The following cases control: *Bowles v. Bourdon*, supra; *Thomas v. Beckering*, supra; and *Burchfield v. Geitz*, 516 S.W.2d 229 (Tex. Civ.App.—El Paso 1974, no writ).

The judgment of the trial Court is affirmed.

### ON MOTION FOR REHEARING

In his motion for rehearing, the Appellant vigorously asserts that we have failed to consider the evidence on causation in the light most favorable to his case and with complete disregard as to contrary evidence and inferences arising therefrom. Dr. Palafox testified by deposition and, after describing that the metallic foreign body was located in the spinal canal and after stating that all metals in a body will produce some degree of an electrolysis reaction, was asked on direct examination:

Question 37:

"If a surgical clip were left in the body of Nolberto Martinez at, on or near the spinal canal area of L-4, L-5 interspace, °would such surgical clip be likely, in all medical probability to produce pain and disability to the patient?"

He answered: "I believe so."

Question 38:

"If so, please describe how such condition would result, if it would?"

Answer:

"I believe that foreign bodies in the spinal canal, especially metallic, can produce electrolytic reactions and produce irritating arachnoiditis in this area."

Question 39:

"In your letter to me of January 8, 1973 you state that 'it is my opinion that there is very little question that this patient has very significant permanent disability at this time and I do believe he is, at present, totally disabled for returning back to any type of heavy physical work.' Would you please tell the jury, if you can, how much of such disability that you have described was caused by the foreign body being imbedded some place in the spinal canal, at about L–4, L–5 vertebra level as you reported to me in your letter of January 8, 1973."

Answer:

"I cannot answer this. Though I believe the patient has a total disability, it could be as a result of the disc problem, a subsequent arachnoiditis from a myelography or subsequent arachnoiditis from the surgical intervention. I cannot state which of these possibilities is the most probable."

Three letters of the doctor were introduced by the plaintiff as expressing his medical opinion, each letter being written after a physical examination was made of the Appellant. The one made after the examination of June 6, 1972, states the following:

"In my opinion there is very little question but that this patient has a lumbar discogenic syndrome, has very serious permanent disability at this time. There is also the question as to whether or not this foreign body (needle) is producing the difficulty. In view of the fact that the needle is in or very close to the spinal canal, there is a possibility it could be producing some reaction, producing nerve root irritation. This is speculative on my part and is definitely not a conclusive answer. * * * "

On cross examination of the doctor, the following was developed:

Cross-Interrogatory No. 6:

"It is your opinion that it would be speculative to say that the 'needle' is producing nerve root irritation, isn't it Doctor?"

Answer: "Yes."

Cross-Interrogatory No. 7:

"Doctor, just as you said on June 6, 1972, it would be pure speculation for you to say that the metal object in question is producing nerve root compression or Martinez's back complaints, wouldn't it?"

Answer: "Yes."

Cross-Interrogatory No. 11:

"Do you agree that it is just as likely that Martinez's back complaints are being produced by some other cause as it is the piece of 'needle' in his back?"

Answer: "Yes. As a matter of fact, this is the answer I gave in the earlier answers to the questions by the Plaintiff's Attorney."

Cross-Interrogatory No. 12:

"Do you agree that the lumbar discogemic syndrome that you have diagnosed in Mr. Martinez is more likely the cause of his disability and complaints than the piece of 'needle' in his back?"

Answer: "I wouldn't say 'more likely' I would say just as likely could be the causative factor producing the back problem."

The one answer made by the doctor to Question 39 cannot be taken out of context, which is what the Appellant insists that we do. It is clear that this answer was based on mere speculation and possibility rather than upon the reasonable degree of medical probability required. *Duncan v. Smith*, 393 S.W.2d 798 at 805 (Tex.1965). At best, the evidence from the one question is so weak as to do no more than create a mere surmise or suspicion as to its existence, which legally is no evidence. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.1970).

The motion for rehearing is overruled.